```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2                         (FT. LAUDERDALE)
                         CASE NO.  21-CR-20263
3


4    THE UNITED STATES OF AMERICA,

              Plaintiff,              Ft. Lauderdale, Florida
5    vs.                                  August 4, 2021

6    GARY TUCKER,

              Defendant.
7    -----------------------------------------------------------
                       Change of Plea Hearing,
8          BEFORE THE HONORABLE WILLIAM P. DIMITROULEAS
                    UNITED STATES DISTRICT JUDGE
9
     APPEARANCES:
10
     FOR THE PLAINTIFF:    UNITED STATES ATTORNEY'S OFFICE, by:
11                         Thomas Austin Watts-Fitzgerald, Esq.
                           99 NE 4th Street
12                         Miami, Florida  33132

13

     FOR THE DEFENDANT:        ALLEN & OVERY, by:
14                             Taylor West, Esq.
                               Jonathan Lopez, Esq.
15                             1101 New York Avenue, NW
                               Washington, DC  20005
16

17                         GELBER, SCHACHTER & GREENBERG, by:
                           Gerald Edward Greenberg, Esq.
18                         One Southeast Third Avenue, Suite 2600
                           Miami, Florida  33131
19


20

21   STENOGRAPHICALLY
     REPORTED BY:          ELLEN A. RASSIE, RMR-CRR
22                         Official Court Reporter to the
                           Honorable Rodney Smith
23                         299 East Broward Blvd., Room 202B
                           Ft. Lauderdale, Florida  33301
24

25
```

1          **WEDNESDAY MORNING SESSION, AUGUST 4, 2021**

2                    P-R-O-C-E-E-D-I-N-G-S

3                            - - -

4              (Call to the Order of the Court.)

5          THE COURT:  Please be seated.  The United States

6   versus Gary Tucker.  If counsel will announce their appearances

7   for the record.

8              MR. WATTS-FITZGERALD:  Good morning, Your Honor.  Tom

9   Watts-Fitzgerald on behalf of the United States.  With me at

10  counsel table is Special Agent Fernando Guitarno with the U.S.

11  Fishing and Wildlife Service Office of law enforcement.

12             MR. WEST:  Good morning, Your Honor.  Taylor West of

13  behalf of Gary Tucker.  I'm also joined by co-counsel Jonathan

14  Lopez and Gary Greenberg who's attending via Zoom.

15             MR. GREENBERG:  Good morning, Your Honor.

16             THE COURT:  And Mr. Tucker is present?

17             DEFENDANT TUCKER:  Good morning, Your Honor.  Gary

18  Tucker, present.

19             THE COURT:  What's the status of Mr. Tucker's case?

20             MR. WEST:  Your Honor, we're here for my client's

21  change of plea.

22             MR. WATTS-FITZGERALD:  Your Honor, may I tender

23  to your clerk a copy of an executed plea agreement and an

24  executed joint factual statement?

25             THE COURT:  Okay.  All right.  We'll take that change

```
 1   of plea in a few moments.  For the people that are on the video

 2   and not in the courtroom, I'm not having a senior moment.  I'm

 3   waiting for the interpreter to finish translating on the second

 4   case.

 5           MR. WEST:  Thank you, Your Honor.

 6           MR. WATTS-FITZGERALD:  Your Honor, only perhaps

 7   Mr. Greenberg had that notion in his mind.

 8           MR. GREENBERG:  Never about the Court, Your Honor.

 9   It wasn't me.

10           MR. WEST:  Good morning, Your Honor.  May I

11   approach --

12           THE COURT:  Yep.

13           MR. WEST:  -- to give the documents?

14           THE COURT:  The United States versus Gonzalo Antonio

15   Guzman.  If counsel will announce their appearances for the

16   record.

17           MR. MATTERS:  Good morning, Your Honor.  Michael

18   Matters representing Mr. Guzman who's seated next to me.

19           THE COURTROOM DEPUTY:  You have to speak in the

20   microphone.

21           MS. RODRIGUEZ-SCHACK:  Good morning, Your Honor.

22           THE COURTROOM DEPUTY:  Pull the microphone closer to

23   you, yeah.

24           MS. RODRIGUEZ-SCHACK:  Good morning, Your Honor.

25   Yvonne Rodriguez-Schack on behalf of the United States.
```

```
 1              THE COURT:  And Mr. Guzman Guzman is present?
 2              MR. MATTERS:  Yes, he is, Your Honor.  He's seated
 3   next to me.
 4              THE COURT:  And do you have a stipulation that the
 5   interpreter is a qualified interpreter?
 6              MR. MATTERS:  So stipulated.
 7              MS. RODRIGUEZ-SCHACK:  Yes, Your Honor.
 8              THE COURT:  And is the interpreting equipment working
 9   properly, Mr. Guzman Guzman?
10              DEFENDANT GUZMAN:  Yes, yes, it is.
11              THE COURT:  If you don't understand something, you'll
12   let me know?
13              DEFENDANT GUZMAN:  Yes, that's right.
14              THE COURT:  And what's the status of Mr. Guzman's
15   case?
16              MR. MATTERS:  Judge, we are here for a change of
17   plea.
18              THE COURT:  If you could swear in Mr. Guzman and
19   Mr. Tucker.
20              THE COURTROOM DEPUTY:  Please raise your right hand.
21                (Thereupon, both defendants were sworn.)
22              DEFENDANT GUZMAN:  Yes, I do.
23              DEFENDANT TUCKER:  I do.  I do so help me God.
24              THE COURT:  Do you understand that you are now under
25   oath and if you answer of my questions falsely, your answers
```

1   may later be used against you in another prosecution for

2   perjury, Mr. Tucker?

3            DEFENDANT TUCKER:  Yes, Your Honor.

4            THE COURT:  And Mr. Guzman Guzman?

5            DEFENDANT GUZMAN:  Could you repeat, please?

6            THE COURT:  Do you understand that you are now under

7   oath and if you answer any of my questions falsely, you can

8   later be prosecuted for perjury?  Do you understand that,

9   Mr. Guzman Guzman?

10           DEFENDANT GUZMAN:  Yes, of course I understand.

11           THE COURT:  And is this what to want do, plead guilty

12  to making a false statement to a Federal agent and throw

13  yourself on the mercy of the Court, Mr. Tucker?

14           DEFENDANT TUCKER:  Yes, Your Honor.

15           THE COURT:  And is this what you want to do, plead

16  guilty to Count 1, conspiracy to possess with the intent to

17  distribute five kilograms or more cocaine and a 1000 kilograms

18  or more of marijuana while onboard a vessel subject to

19  jurisdiction of the United States and throw yourself on the

20  mercy of the Court, Mr. Guzman Guzman?

21           DEFENDANT GUZMAN:  Yes, yes, and I plead guilty, of

22  course.

23           THE COURT:  Mr. Guzman Guzman, if you plead guilty to

24  Count 1, the Government's going to move to dismiss Count 2,

25  possession with the intent to distribute five kilograms or more

```
 1  of cocaine and a 1000 kilograms or more of marijuana at the
 2  time of sentencing.  Is that your understanding, Mr. Guzman
 3  Guzman?
 4          DEFENDANT GUZMAN:  Of course, yes.
 5          THE COURT:  If you plead guilty, I'm going to
 6  adjudicate you guilty which will make you a convicted felon and
 7  cause you to lose certain civil rights, like your right to vote
 8  your right to hold public office, your right to serve on a jury
 9  your right to possesses a firearm and some other rights.  Do
10  you understand that, Mr. Tucker?
11          DEFENDANT TUCKER:  Yes, Your Honor.
12          THE COURT:  And Mr. Guzman Guzman?
13          DEFENDANT GUZMAN:  Yes.
14          THE COURT:  If you plead guilty, I'm going to defer
15  sentencing.  I'll order a Presentence Investigation report,
16  I'll set sentencing for October 13th at 1:15 on Mr. Guzman
17  Guzman and at 1:30 on Mr. Tucker here in this courtroom.
18          At that time, I'll listen to what you have to say,
19  your lawyer has to say, the prosecutor and anybody else and
20  I'll give you what I think is a fair sentence.  Do you
21  understand that, Mr. Tucker?
22          DEFENDANT TUCKER:  Yes, Your Honor.
23          THE COURT:  And Mr. Guzman Guzman?
24          DEFENDANT GUZMAN:  Yes, of course.
25          THE COURT:  You may not think the sentence is fair,
```

1   your lawyers may not think it's fair, the prosecutor may not

2   think it's fair, but I'll think it's fair.  Do you understand

3   that, Mr. Tucker?

4          DEFENDANT TUCKER:  Yes, Your Honor.

5          THE COURT:  And Mr. Guzman Guzman?

6          DEFENDANT GUZMAN:  Yes.

7          THE COURT:  Mr. Tucker, is it okay with you for only

8   one of your lawyers to be here in court today and the other two

9   lawyers to appear by videoconferencing?

10          DEFENDANT TUCKER:  Yes, it is, Your Honor.

11          THE COURT:  And do you understand that if you wanted

12   all three lawyers here, we could postpone this hearing to

13   another date and ask everybody to appear here in court in

14   person?

15          DEFENDANT TUCKER:  Yes, I understand, Your Honor.

16          THE COURT:  But you want to go forward with the way

17   it is this morning?

18          DEFENDANT TUCKER:  Yes, Your Honor.

19          THE COURT:  Does the Government have any objection to

20   Mr. Tucker remaining out under the same conditions of pretrial

21   release pending sentencing?

22          MR. WATTS-FITZGERALD:  We do not, Your Honor.

23          THE COURT:  Mr. Tucker, sometimes if a judge

24   sentences a defendant to prison, that judge will allow the

25   defendant to voluntarily surrender to the prison designated by

1    the Bureau of Prisons 30 or 60 days later.  In 23 years, I've

2    done that maybe five times.

3          So, if I were to sentence you to prison in October,

4    it's highly likely that you would have to start serving that

5    prison sentence on that date and that you would not be allowed

6    to later voluntarily surrender.  Do you understand that,

7    Mr. Tucker?

8          DEFENDANT TUCKER:  Yes, Your Honor.

9          THE COURT:  Do you need any more time to think about

10   that or talk about that with any of your lawyers?

11         DEFENDANT TUCKER:  No, Your Honor.

12         THE COURT:  At the time of sentencing, we're going to

13   score up the sentencing guidelines.  We're going to come up

14   with an advisory guideline range that Congress thinks I should

15   consider in your case.  Do you understand that, Mr. Tucker?

16         DEFENDANT TUCKER:  Yes, Your Honor.

17         THE COURT:  And Mr. Guzman Guzman?

18         DEFENDANT GUZMAN:  Could you repeat that, please?

19         THE COURT:  I'm going to order a Presentence

20   Investigation report.  I'll listen to what you have to say, and

21   everybody else has to say.  The Presentence Investigation

22   report will contain sentencing guidelines recommendations.

23         Have you and your attorney had an opportunity to

24   discuss how the sentencing guidelines might apply to your case,

25   Mr. Guzman Guzman?

```
 1              DEFENDANT GUZMAN:  Yes.  Of course, yes.
 2              THE COURT:  Do you understand that I'm not going to
 3    be able to determine the advisory guideline range for your case
 4    until after the Presentence Investigation report has been
 5    completed and you and the Government have had an opportunity to
 6    challenge the reported facts and the application of the
 7    guidelines recommended by the probation officer, Mr. Tucker?
 8              DEFENDANT TUCKER:  Yes, Your Honor.
 9              THE COURT:  And Mr. Guzman Guzman?
10              DEFENDANT GUZMAN:  Yes, yes, of course.
11              THE COURT:  And do you understand that the sentence
12    that I impose may be different from any estimate your lawyer or
13    anybody else may have given you, Mr. Tucker?
14              DEFENDANT TUCKER:  Yes, Your Honor.
15              DEFENDANT GUZMAN:  And Mr. Guzman Guzman?
16              THE DEFENDANT:  Yes, right.
17              THE COURT:  So, if I give you a higher sentence than
18    you were hoping for, that's the chance you take by your open
19    plea and it would not be grounds to withdraw your guilty plea.
20    Do you understand that, Mr. Tucker?
21              DEFENDANT TUCKER:  Yes, Your Honor.
22              THE COURT:  And Mr. Guzman Guzman?
23              DEFENDANT GUZMAN:  Yes, of course.
24              THE COURT:  Do you also understand that after your
25    advisory guideline range has been determined, that I have the
```

```
 1   authority in some circumstances to vary or depart from the
 2   guidelines and impose a sentence that is either more severe or
 3   less severe than the sentence called for by the guidelines,
 4   Mr. Tucker?
 5           DEFENDANT TUCKER:  Yes, Your Honor.
 6           THE COURT:  And Mr. Guzman Guzman?
 7           DEFENDANT GUZMAN:  Yes.
 8           THE COURT:  So, if I were to do an upward departure
 9   or an upward variance, that's the chance you take by your open
10   and it would not be grounds to withdraw your guilty plea.  Do
11   you understand that, Mr. Tucker?
12           DEFENDANT TUCKER:  Yes, Your Honor.
13           THE COURT:  Mr. Guzman Guzman?
14           DEFENDANT GUZMAN:  Yes, that's right.
15           THE COURT:  You also understand that parole has been
16   abolished and if I sentence you to prison, you will not be
17   released on parole, Mr. Tucker?
18           DEFENDANT TUCKER:  Yes, Your Honor.
19           THE COURT:  And Mr. Guzman Guzman?
20           DEFENDANT GUZMAN:  Yes.
21           THE COURT:  The actual percentage of any sentence
22   that you do in custody is between you and the Bureau of
23   Prisons.  Any good time or early release laws if they're
24   applicable to your case aren't part of these plea negotiations.
25   Do you understand that, Mr. Tucker?
```

```
 1              DEFENDANT TUCKER:  Yes, Your Honor.
 2              THE COURT:  And Mr. Guzman Guzman?
 3              DEFENDANT GUZMAN:  Yes, that's right.
 4              THE COURT:  So, if the prison makes you do every day
 5    of the sentence, that's the chance you take by your open plea
 6    and it would not be grounds to withdraw your guilty plea.  Do
 7    you understand that, Mr. Tucker?
 8              DEFENDANT TUCKER:  Yes, Your Honor.
 9              THE COURT:  And Mr. Guzman Guzman?
10              DEFENDANT GUZMAN:  That's right, yes.
11              THE COURT:  So, at the time of sentencing, I can give
12    you probation or I could give you up to five years in prison.
13    Do you understand that, Mr. Tucker?
14              DEFENDANT TUCKER:  Yes, Your Honor.
15              THE COURT:  And Mr. Guzman Guzman, there's a ten-year
16    mandatory minimum in your case.  That if you don't qualify for
17    the Safety Valve, I would have to impose at least a ten-year
18    mandatory minimum and I could give you up to life in prison.
19    Do you understand that, Mr. Guzman Guzman?
20              DEFENDANT GUZMAN:  Yes.
21              THE COURT:  And understanding all these things, is
22    this what you want to do, plead guilty and throw yourself on
23    the mercy of the Court, Mr. Tucker?
24              DEFENDANT TUCKER:  Yes, I do, Your Honor.
25              THE COURT:  And Mr. Guzman Guzman?
```

```
 1            DEFENDANT GUZMAN:  Yes.  I plead guilty.

 2            THE COURT:  Mr. Tucker, I have before me a five-page

 3   plea agreement.  Is that your signature, the last one on page

 4   five?

 5            DEFENDANT TUCKER:  Yes, it is, Your Honor.

 6            THE COURT:  And is that your signature, Mr. Lopez?

 7            MR. WEST:  Your Honor, this is Mr. West.  I signed on

 8   behalf of Mr. Lopez.

 9            THE COURT:  I thought we had Mr. Lopez on the line.

10            MR. LOPEZ:  Yes, good morning, Your Honor.  Yes,

11   that's correct.

12            THE COURT:  So, that was okay with you, Mr. Lopez,

13   for Mr. West to sign?

14            MR. LOPEZ:  I apologize for the speakover.  Yes.

15            THE COURT:  Is that your signature on page four,

16   Mr. Watts-Fitzgerald?

17            THE PLAINTIFF:  It is, Your Honor.

18            THE COURT:  Mr. Tucker, I also have before me a

19   three-page joint factual statement.  Is that your signature,

20   the last one on the last page?

21            DEFENDANT TUCKER:  Yes, it is, Your Honor.

22            THE COURT:  And is that your signature, Mr. West, for

23   Mr. Lopez?

24            MR. WEST:  It is, Your Honor.

25            THE COURT:  And is that your signature,
```

```
 1   Mr. Watts-Fitzgerald?
 2            MR. WATTS-FITZGERALD:  Yes, Your Honor, it is.
 3            THE COURT:  Mr. Guzman Guzman, I have before me a
 4   seven-page plea agreement.  Is that your signature, the second
 5   one on the last page?
 6            DEFENDANT GUZMAN:  Yes.
 7            THE COURT:  And is that your signature,
 8   Ms. Rodriguez-Schack?
 9            MS. RODRIGUEZ-SCHACK:  Yes, Your Honor.  I
10   electronically signed.
11            THE COURT:  And is that your signature, Mr. Matters?
12            MR. MATTERS:  Yes, Your Honor.
13            THE COURT:  Mr. Guzman Guzman, I also have a
14   three-page stipulated factual proffer.  Is that your signature,
15   the second one on the last page?
16            DEFENDANT GUZMAN:  Yes, that's right.
17            THE COURT:  And Madam Interpreter, are those your
18   signatures on the last page of both documents?
19            THE INTERPRETER:  Yes, Your Honor.
20            THE COURT:  Did you have an opportunity to translate
21   both documents for Mr. Guzman Guzman here in open court this
22   morning?
23            THE INTERPRETER:  Yes, Your Honor.
24            THE COURT:  Mr. Guzman Guzman, were you satisfied
25   with the interpreter's translation of these two documents?
```

1          DEFENDANT GUZMAN:  Yes.

2          THE COURT:  Was her translation consistent with

3    previous interpretations that may have been done for you?

4          DEFENDANT GUZMAN:  Yes.  It was very similar, yes.

5          THE COURT:  Were there any material differences?

6          DEFENDANT GUZMAN:  No.

7          THE COURT:  As I mentioned, Mr. Tucker, the maximum

8    penalty in your case is five years in prison.  Is that your

9    understanding?

10         DEFENDANT TUCKER:  Yes, Your Honor.

11         THE COURT:  I could impose a fine of $250,000 or

12   twice the gain or loss arising under the relevant conduct,

13   whichever is greater.  Do you understand that?

14         DEFENDANT TUCKER:  Yes, Your Honor.

15         THE COURT:  I could put you on a period of five years

16   of probation and if you were to violate the probation, I could

17   bring you back in front of me, there wouldn't be a jury trial

18   and if I were satisfied that you had violated my court order, I

19   could send you to prison for up to five years.  Do you

20   understand that?

21         DEFENDANT TUCKER:  Yes, I understand, Your Honor.

22         THE COURT:  If I send you to prison in October, I

23   could put you on a period of three years of supervised release

24   when you got out of jail, and if you violated the rules of

25   supervised release, I could bring you back in front of me,

 1   there wouldn't be a jury trial, and if I were satisfied that

 2   you had violated my court order, I could send you back to

 3   prison for up to two years.  Do you understand that?

 4              DEFENDANT TUCKER:  Yes, Your Honor.

 5              THE COURT:  And you wouldn't be entitled to any

 6   credit for time served on a violation of supervised release for

 7   any sentence that I give you in October.  Do you understand

 8   that?

 9              DEFENDANT TUCKER:  Yes, Your Honor.

10              THE COURT:  And there would be a hundred dollar

11   special assessment due at the time of sentencing.  Do you

12   understand that?

13              DEFENDANT TUCKER:  Yes, Your Honor.

14              THE COURT:  Mr. Guzman Guzman, as I mentioned, the

15   maximum penalty in your case is life in prison.  Do you

16   understand that?

17              DEFENDANT GUZMAN:  Yes, yes.

18              THE COURT:  And there's also a ten-year mandatory

19   minimum.  Do you understand that?

20              DEFENDANT GUZMAN:  That's right, yes.

21              THE COURT:  There's only two ways I could give you a

22   sentence under the mandatory minimum.  One, if you perform

23   substantial assistance.  Do you understand that?

24              DEFENDANT GUZMAN:  No, I don't understand that.

25              THE COURT:  All right.  I'll explain it to you in a

1   moment.  Ms. Rodriguez-Schack, do you anticipate Mr. Guzman

2   Guzman attempting to perform substantial assistance in this

3   case?

4            MS. RODRIGUEZ-SCHACK:  I do not, Your Honor.

5            THE COURT:  So, it's up to the Government's sole and

6   unreviewable judgment to whether or not any cooperation you

7   give them is of such a significance to their investigations so

8   as to warrant their giving me the discretion to go below the

9   ten-year mandatory minimum.  Do you understand that, Mr. Guzman

10  Guzman?

11           DEFENDANT GUZMAN:  Yes, I understand.

12           THE COURT:  At this point, the prosecutor doesn't

13  anticipate you cooperating or they're needing your cooperation.

14  Do you understand that?

15           DEFENDANT GUZMAN:  Yes.

16           THE COURT:  But if something changes and you

17  cooperate, and if they file a motion for substantial

18  assistance, that would give me the discretion to go below the

19  ten-year mandatory minimum.  Do you understand that?

20           DEFENDANT GUZMAN:  Yes, yes.

21           THE COURT:  But as I indicated, it's up to their sole

22  and unreviewable judgment as to whether or not your cooperation

23  is of such a significance as to their investigation as to

24  warrant they're giving me the discretion to go below the

25  mandatory minimum.  Do you understand that?

1          DEFENDANT GUZMAN:  Yes.

2          THE COURT:  If they don't file a motion for

3    substantial assistance, unless their failure to do so is done

4    in bad faith or on unconstitutional grounds, then I can't go

5    below the mandatory minimum unless you satisfy the Safety

6    Valve.  Do you understand that?

7          DEFENDANT GUZMAN:  Yes.  That's right, yes.

8          THE COURT:  And the lawyers' recommendations are

9    persuasive, not controlling on me.  So, if the Government were

10   to make a motion for substantial assistance and if I were not

11   to go below the ten-year mandatory minimum, that's the chance

12   you take by your open plea and it would not be grounds to

13   withdraw your guilty plea.  Do you understand that?

14         DEFENDANT GUZMAN:  That's right, yes.

15         THE COURT:  If you qualify for the Safety Valve,

16   that's binding on me and I have to give you credit for it.  Do

17   you understand that?

18         DEFENDANT GUZMAN:  Yes.

19         THE COURT:  Other than dismissing Count 2, that's

20   about the only thing in this agreement that's binding on me.

21   Do you understand that?

22         DEFENDANT GUZMAN:  That's right.

23         THE COURT:  And again, Count 2 also would have

24   carried a maximum of life in prison with a ten-year mandatory

25   minimum.  By your plea here today, the Government's going to

1  dismiss Count 2 at the time of sentencing.  Do you understand

2  that?

3          DEFENDANT GUZMAN:  That's right, yes.

4          THE COURT:  To qualify for the Safety Valve, you

5  can't have more than four criminal history points, you can't

6  have a prior offense earning three points, you can't have a

7  prior violent offense earning two points, you can't have used

8  violence or threats of violence or possessed a dangerous weapon

9  in connection with this case.

10         The case can't have resulted in death or serious

11  bodily injury to anybody.  You can't have been an organizer,

12  leader or manager or supervisor of others.  No later than the

13  time of sentencing, you have to give the Government a truthful

14  statement setting forth everything you know about the case.  Do

15  you understand the qualifications for the Safety Valve?

16         DEFENDANT GUZMAN:  Yes, that's right.

17         THE COURT:  And the Government hasn't gotten the

18  truthful statement yet so they don't know if you're going to

19  qualify.  Do you understand that?

20         DEFENDANT GUZMAN:  Yes.

21         THE COURT:  If you qualify, it eliminates the

22  ten-year mandatory minimum and it gives you a two level

23  reduction to no lower than level 17.  Do you understand that?

24         DEFENDANT GUZMAN:  That's right, yes.

25         THE COURT:  The First Step Act allowed defendants who

1    were prosecuted under Title 46 to get the benefit of the Safety

2    Valve before the First Step Act of 2018.  If you were

3    prosecuted under Title 46, you were disqualified from the

4    Safety Valve.

5              The Government is agreeing to recommend that I vary

6    downward from the advisory guideline range as if you were

7    qualified for a drug offense other than Title 46.  Is that your

8    understanding?

9              DEFENDANT GUZMAN:  Yes.

10             THE COURT:  How are the sentencing guidelines going

11   to be modified to match the First Step Act?  I don't understand

12   that, Ms. Schack.

13             MS. RODRIGUEZ-SCHACK:  Your Honor, I apologize.  That

14   is a pretty convoluted paragraph that unfortunately my office

15   has drafted.  Basically, the gist of that paragraph is that as

16   the Safety Valve is now available to defendants subsequent to

17   2018, it still has not been codified in the guidelines so the

18   United States is agreeing to give the defendant two levels off

19   but he cannot later then come back and double dip and then

20   again when it finally gets codified, come back and request an

21   additional two levels.  That's basically what the intent of

22   that paragraph is.

23             THE COURT:  I'm still confused.  I understand the

24   guidelines haven't been amended because the Guidelines

25   Commission hasn't had a quorum for years, but it seemed to

1    me --

2            MS. RODRIGUEZ-SCHACK:  Right.

3            THE COURT:  -- that the First Step Act should be

4    implemented to score his guidelines as if he had committed the

5    crime in the United States and not under Title 46.  Am I wrong

6    about that?

7            MS. RODRIGUEZ-SCHACK:  Title 46 now qualifies for the

8    benefits of Safety Valve in order to break the ten-year

9    mandatory minimum.  Before the First Step Act, Your Honor,

10   every defendant would get two levels off.

11           However, they wouldn't enjoy the second benefit which

12   is that it would break the ten-year mandatory minimum.  Now

13   after the First Step Act, they get the two levels off plus it

14   will break the mandatory minimums.

15           THE COURT:  You're talking about two levels.  You're

16   talking about two levels no lower than level 17?

17           MS. RODRIGUEZ-SCHACK:  Two levels irrespective.  I

18   think level 17, Your Honor, has more to do with the acceptance

19   of responsibility.

20           THE COURT:  I don't think so.  I think the Safety

21   Valve at one point talked about two levels to no more than

22   level 17 but maybe it changed now.

23           But in any event, if you're talking about this amount

24   of drugs, you're never going to be down to a level 17 anyway.

25           MS. RODRIGUEZ-SCHACK:  That is correct.

1    THE COURT:  So, I don't understand -- he's going to

2  get the two levels off if he qualifies for the Safety Valve.

3  It will eliminate the ten-year mandatory minimum, but I don't

4  understand what he's giving up, what else he can't ask for

5  later on.

6    MS. RODRIGUEZ-SHACK:  When the new provisions of the

7  Safety Valve are codified in the guidelines, he cannot then

8  file a motion post conviction and say, hey, now we have this

9  codified in the guidelines, I want an additional two levels

10  off.

11    THE COURT:  I understand.  So, what you're saying is

12  he's going to get the two levels now, and then if the

13  guidelines are later changed and made retroactive, he can't

14  come in and then say give me another two levels because he

15  already got the two levels now?

16    MS. RODRIGUEZ-SHACK:  That is correct, sir.

17    THE COURT:  Do you understand that, Mr. Guzman

18  Guzman?

19    DEFENDANT GUZMAN:  Yes, that's right.

20    THE COURT:  You need any more time to think about

21  that or talk about that with your lawyer?

22    DEFENDANT GUZMAN:  You mean about pleading guilty?

23    THE COURT:  About how the Safety Valve is going to

24  affect your sentence.

25    DEFENDANT GUZMAN:  Oh, no.  I do need to talk to him.

```
 1  I want to talk to him first.
 2            THE COURT:  Go ahead.
 3                       (Short pause had.)
 4            THE COURT:  Mr. Tucker, the lawyers are agreeing that
 5  the base offense level is going to be a Level 6.  Is that your
 6  understanding?
 7            DEFENDANT TUCKER:  Yes, it is, Your Honor.
 8            THE COURT:  They're also agreeing that there should
 9  be no adjustment under Section 2B1.1 of the guidelines.  Do you
10  understand that?
11            DEFENDANT TUCKER:  Yes, Your Honor.
12            THE COURT:  They're also agreeing that there should
13  be a two level increase for obstructing justice under the
14  guidelines.  Do you understand that?
15            DEFENDANT TUCKER:  Yes, Your Honor.
16            THE COURT:  So, if all those calculations are
17  correct, you would come up with an offense level 8.  Is that
18  your understanding?
19            DEFENDANT TUCKER:  Yes, Your Honor.
20            THE COURT:  Six plus two equals eight, right?
21            DEFENDANT TUCKER:  Yes, Your Honor.
22            THE COURT:  But if for some reason I were to come up
23  with a guideline offense level higher than 8, that's a chance
24  you take by your open plea and it would not be grounds to
25  withdraw your guilty plea.  Do you understand that?
```

1          DEFENDANT TUCKER:  Yes, Your Honor.

2          THE COURT:  The Government's also going to recommend

3     that I reduce your guidelines by two levels based on your

4     acceptance of responsibility.  And do you understand that?

5          DEFENDANT TUCKER:  Yes, I do, Your Honor.

6          THE COURT:  But they don't have to make that

7     recommendation if you, one, fail or refuse to make a full,

8     accurate, complete disclosure to the probation office of the

9     circumstances surrounding the case, or two, it's found that you

10    misrepresented facts to the Government prior to pleading guilty

11    or three, you commit any misconduct after pleading guilty

12    including but not limited to breaking the law, lying or

13    violating any term of your pretrial release.

14          If you refuse to do any of those things, you'd be

15    stuck with your guilty plea and the Government wouldn't have to

16    recommend the reduction for acceptance of responsibility.  Do

17    you understand that?

18          DEFENDANT TUCKER:  Yes, Your Honor.

19          THE COURT:  And the lawyers' recommendations are

20    persuasive, not controlling on me so if for some reason I don't

21    go along with the recommendation, that is, if for some reason I

22    don't give you credit for acceptance of responsibility, that's

23    the chance you take by your open plea and it would not be

24    grounds to withdraw your guilty plea.  Do you understand that,

25    Mr. Tucker?

 1          DEFENDANT TUCKER:  Yes, Your Honor.

 2          THE COURT:  In return for you pleading guilty to this

 3   information, the Government is agreeing that it won't bring

 4   additional charges against you for wildlife trafficking related

 5   offenses based on conduct that's known to the United States at

 6   this time.  Is that your understanding, Mr. Tucker?

 7          DEFENDANT TUCKER:  Yes, Your Honor.

 8          THE COURT:  Mr. Guzman Guzman, have you had some more

 9   time to think about this and talk about it with your lawyer?

10          DEFENDANT GUZMAN:  That's right.

11          THE COURT:  And you want to stick with your decision

12   to plead guilty?

13          DEFENDANT GUZMAN:  That's right.

14          THE COURT:  And you understand now the Safety Valve,

15   how it operates?

16          DEFENDANT GUZMAN:  That's right, yes.

17          THE COURT:  Did you have an opportunity to read and

18   discuss the plea agreement and the stipulated factual proffer

19   before you signed them, Mr. Tucker?

20          DEFENDANT TUCKER:  Yes, Your Honor.

21          THE COURT:  Mr. Guzman Guzman?

22          DEFENDANT GUZMAN:  Yes.

23          THE COURT:  Does the plea agreement represent in its

24   entirety any understanding that you have with the Government,

25   Mr. Tucker?

```
 1              DEFENDANT TUCKER:  Yes, Your Honor.
 2              THE COURT:  And Mr. Guzman Guzman?
 3              DEFENDANT GUZMAN:  I'm sorry, could you repeat that?
 4              THE COURT:  Is this the whole deal?  Are there any
 5    secret deals that aren't on these seven pieces of paper,
 6    Mr. Guzman Guzman?
 7              DEFENDANT GUZMAN:  No, none.
 8              THE COURT:  Do you understand the terms of the plea
 9    agreement, Mr. Tucker?
10              DEFENDANT TUCKER:  Yes, Your Honor.
11              THE COURT:  Mr. Guzman Guzman?
12              DEFENDANT GUZMAN:  That's right.
13              THE COURT:  Has anyone made any other or different
14    promises or assurances of any kind to you in an effort to get
15    you to plead guilty in this case, Mr. Tucker?
16              DEFENDANT TUCKER:  No, Your Honor.
17              THE COURT:  Mr. Guzman Guzman?
18              DEFENDANT GUZMAN:  No, no.
19              THE COURT:  And do you understand that the terms of
20    the plea agreement are merely recommendations to the Court,
21    that I could reject those recommendations without permitting
22    you to withdraw your plea of guilty and I could impose a
23    sentence that is more severe than you may have anticipated,
24    Mr. Tucker?
25              DEFENDANT TUCKER:  I understand, Your Honor, yes.
```

```
 1              THE COURT:  Mr. Guzman Guzman?

 2              DEFENDANT GUZMAN:  That's right.

 3              THE COURT:  And understanding all these things, is

 4    this what you want to do, plead guilty and throw yourself on

 5    the mercy of the Court, Mr. Tucker?

 6              DEFENDANT TUCKER:  Yes, I do, Your Honor.

 7              THE COURT:  Mr. Guzman Guzman?

 8              DEFENDANT GUZMAN:  That's right, yes.

 9              THE COURT:  And do you understand that if you plead

10    guilty, I'm going to adjudicate you guilty which will make you

11    a convicted felon and cause you to lose certain civil rights

12    like your right to vote, your right to hold public office, your

13    right to serve on a jury, your right to possess a firearm and

14    some other rights, Mr. Tucker?

15              DEFENDANT TUCKER:  Yes, Your Honor.

16              THE COURT:  And Mr. Guzman Guzman?

17              DEFENDANT GUZMAN:  Yes.

18              THE COURT:  And, Mr. Guzman Guzman, you're agreeing

19    that the amount of cocaine involved was 240 kilograms.  Do you

20    understand that?

21              DEFENDANT GUZMAN:  Yes.

22              THE COURT:  And you're agreeing that the amount of

23    marijuana involved was 1,695 kilograms, is that correct?

24              DEFENDANT GUZMAN:  That's right.

25              THE COURT:  And either of those two amounts of drugs
```

 1    would have qualified for a maximum sentence of life in prison

 2    with a ten-year mandatory minimum.  Do you understand that?

 3              DEFENDANT GUZMAN:  That's right, yes.

 4              THE COURT:  Ms. Rodriguez-Schack, is the Government

 5    seeking a forfeiture in this case?

 6              MS. RODRIGUEZ-SCHACK:  There are no identifiable

 7    assets at this time, Your Honor, so it would be no.

 8              THE COURT:  So, if the Government were to later find

 9    some substitute assets or want to forfeit them, Mr. Guzman

10    Guzman, you're agreeing that they could do that.  Do you

11    understand that?

12              DEFENDANT GUZMAN:  That's right.

13              THE COURT:  And you're agreeing that if they do that

14    forfeiture, you're giving up any complaint that it would

15    violate the Eighth Amendment to the United States Constitution

16    as being an excessive fine.  Do you understand that?

17              DEFENDANT GUZMAN:  That's right, yes.

18              THE COURT:  Now, where were you born, Mr. Tucker?

19              DEFENDANT TUCKER:  In Hornell, New York, sir.

20              THE COURT:  How about you, Mr. Guzman Guzman?

21              DEFENDANT GUZMAN:  In Nicaragua.

22              THE COURT:  You do you understand, Mr. Guzman Guzman,

23    that this plea could affect your right to stay in this country

24    or come back to this country?

25              DEFENDANT GUZMAN:  Yes.

```
 1          THE COURT:  That decision is made by another branch

 2  of Government and nobody here in this courtroom, not your

 3  lawyer, the prosecutor nor I can predict with certainty exactly

 4  what's going to happen.  Do you understand that, Mr. Guzman

 5  Guzman?

 6          DEFENDANT GUZMAN:  That's right.

 7          THE COURT:  My guess is when you're done with your

 8  sentence, that they're going to deport you.  Do you understand

 9  that?

10          DEFENDANT GUZMAN:  Yes.

11          THE COURT:  And if that happens, that's the chance

12  you take by your open plea and it would not be grounds to

13  withdraw your guilty plea.  Do you understand that, Mr. Guzman

14  Guzman?

15          DEFENDANT GUZMAN:  That's right, yes.

16          THE COURT:  About ten years ago, the United States

17  Supreme Court decided a case called Padilla versus Kentucky

18  where they decided that the immigration consequences of a

19  guilty plea were very important to some defendants.  Do you

20  understand that, Mr. Guzman Guzman?

21          DEFENDANT GUZMAN:  That's right.

22          THE COURT:  And have you had enough time to think

23  about that and talk about that with your lawyer or an

24  immigration lawyer?

25          DEFENDANT GUZMAN:  Could you repeat that, please?
```

1          THE COURT:  Have you had enough time to think about

2    this and talk about it with your lawyer or an immigration

3    lawyer?

4          DEFENDANT GUZMAN:  With him, yes, yes.

5          THE COURT:  Do you need any more time to think about

6    it or talk about it with your lawyer or an immigration lawyer?

7          DEFENDANT GUZMAN:  No, with him.  I'm fine with him.

8          THE COURT:  Is that what you want to do, plead guilty

9    and take your chances with deportation?

10         DEFENDANT GUZMAN:  That's right, yes.

11         THE COURT:  I could impose a fine of ten million

12   dollars.  Do you understand that, Mr. Guzman Guzman?

13         DEFENDANT GUZMAN:  Yes, I understand.

14         THE COURT:  I could give you at least five years of

15   supervised release when you got out of jail, and if you

16   violated the supervised release, I could bring you back in

17   front of me, there wouldn't be a jury trial, and if I were

18   satisfied that you had violated my court order, I could send

19   you back to prison for up to five years.  Do you understand

20   that, Mr. Guzman Guzman?

21         DEFENDANT GUZMAN:  That's right, yes.

22         THE COURT:  And you wouldn't be entitled to any

23   credit for time served on a violation of supervised release for

24   any sentence that I give you in October.  Do you understand

25   that, Mr. Guzman Guzman?

1          DEFENDANT GUZMAN:  That's right.

2          THE COURT:  And there would be a hundred dollar

3     special assessment due at the time of sentencing.  Do you

4     understand that, Mr. Guzman Guzman?

5          DEFENDANT GUZMAN:  That's right, yes.

6          THE COURT:  Now, in return for you pleading guilty,

7     the Government's going to recommend that I reduce your

8     guidelines by three levels if you score level 16 or above based

9     on your acceptance of responsibility.  Do you understand that?

10         DEFENDANT GUZMAN:  That's right, yes.

11         THE COURT:  But they don't have to make that

12    recommendation, if you, one, fail or refuse to make a full,

13    accurate, and complete disclosure to the probation office of

14    the circumstances surrounding the case, or two, if it is found

15    that you have misrepresented facts to the Government prior to

16    pleading guilty or three, you commit any misconduct after

17    pleading guilty including but not limited to breaking the law

18    or lying.

19         If you were to do any of those things, you'd be stuck

20    with your guilty plea and the Government wouldn't have to

21    recommend the reduction for acceptance of responsibility.  Do

22    you understand that, Mr. Guzman Guzman?

23         DEFENDANT GUZMAN:  Yes.

24         THE COURT:  And as I indicated earlier, the lawyers'

25    recommendations are persuasive, not controlling on me, so if

```
1   for some reason I don't give you credit for acceptance of

2   responsibility, that's the chance you take by your open plea

3   and it would not be grounds to withdraw your guilty plea.  Do

4   you understand that, Mr. Guzman Guzman?

5            DEFENDANT GUZMAN:  Yes.

6            THE COURT:  Paragraph 7-C on page four says that the

7   Government could wiggle out of recommending acceptance of

8   responsibility if you violate any term of your pretrial release

9   but you're in jail so that really doesn't apply to you.  Do you

10  understand that, Mr. Guzman Guzman?

11           DEFENDANT GUZMAN:  That's right, yes.

12           THE COURT:  Are there any other aspects of the plea

13  agreement I've neglected to discuss with Mr. Tucker,

14  Mr. Watts-Fitzgerald?

15           MR. WATTS-FITZGERALD:  No, Your Honor.  Thank you.

16           THE COURT:  Mr. Greenberg?

17           MR. GREENBERG:  I'm sorry, Your Honor, nothing

18  further.

19           THE COURT:  Mr. Lopez?

20           MR. LOPEZ:  No, Your Honor.  Thank you.

21           THE COURT:  And Mr. West?

22           MR. WEST:  No, Your Honor.  Thank you.

23           THE COURT:  Are there any other aspects of the plea

24  agreement I've neglected to discuss with Mr. Guzman Guzman,

25  Ms. Rodriguez-Schack?
```

```
 1              MS. RODRIGUEZ-SCHACK:  No, Your Honor.  Thank you.

 2              THE COURT:  And Mr. Matters?

 3              MR. MATTERS:  No, Your Honor.

 4              THE COURT:  Before accepting your pleas of guilty, I

 5   must determine whether or not your offers to plead guilty are

 6   done freely and voluntarily with full knowledge of the various

 7   rights that you give up by such a plea, and also whether your

 8   offers to plead guilty are done with a sufficient understanding

 9   of the possible consequences of that plea.

10              If at any time you do not understand what I'm saying,

11   I want you to stop me so that you can consult with your

12   attorney and receive an explanation, or so that I can explain

13   anything you don't understand.  Will you do that, Mr. Tucker?

14              DEFENDANT TUCKER:  Yes, Your Honor.

15              THE COURT:  And Mr. Guzman Guzman?

16              DEFENDANT GUZMAN:  Yes, yes.

17              THE COURT:  Have you understood everything so far,

18   Mr. Tucker?

19              DEFENDANT TUCKER:  Yes, Your Honor.

20              THE COURT:  And Mr. Guzman Guzman?

21              DEFENDANT GUZMAN:  That's right, yes.

22              THE COURT:  How old are you, Mr. Tucker?

23              DEFENDANT TUCKER:  64.

24              THE COURT:  How about you, Mr. Guzman Guzman?

25              DEFENDANT GUZMAN:  48.
```

```
 1              THE COURT:  How far have you gone in school,

 2    Mr. Tucker?

 3              DEFENDANT TUCKER:  A juris doctor, Your Honor.

 4              THE COURT:  And how about you, Mr. Guzman Guzman?

 5              DEFENDANT GUZMAN:  Second grade in school.

 6              THE COURT:  Are you a member of any Bar, Mr. Tucker?

 7              DEFENDANT TUCKER:  No.  I relinquished my license

 8    last month, Your Honor.

 9              THE COURT:  So, you understand this plea is going to

10    affect your ability to ever get the license back?

11              DEFENDANT TUCKER:  Yes, I do, Your Honor.

12              THE COURT:  Can you read and write okay, Mr. Guzman

13    Guzman?

14              DEFENDANT GUZMAN:  Yes, that I can do.

15              THE COURT:  In English?

16              DEFENDANT GUZMAN:  Sort of, no.

17              THE COURT:  Is there anything that you would have

18    liked to have read or that wasn't read or translated to you

19    to your satisfaction?

20              DEFENDANT GUZMAN:  No, I'm satisfied up till now.

21    I'm fine.

22              THE COURT:  So, you understand all the paperwork in

23    the case?

24              DEFENDANT GUZMAN:  Yes.

25              THE COURT:  What type of work have you done most of
```

```
1    your life, Mr. Tucker?

2              DEFENDANT TUCKER:  I've been involved in biomedical

3    research, Your Honor.

4              THE COURT:  How about you, Mr. Guzman Guzman?

5              DEFENDANT GUZMAN:  In the fields, and then I

6    immigrated to Costa Rica when I was 13 or 14, and then I

7    started fishing in the high seas.

8              THE COURT:  Do you know what a felony is, Mr. Tucker?

9              DEFENDANT TUCKER:  Yes, Your Honor.

10             THE COURT:  Mr. Guzman Guzman?

11             DEFENDANT GUZMAN:  If it's a felony?

12             THE COURT:  A felony is a crime that's more serious

13   than a misdemeanor.  Both of your charges in the indictment are

14   felonies.  A felony caused you to lose those civil rights that

15   we talked about.  Do you now understand what a felony is?

16             DEFENDANT GUZMAN:  No, no.

17             THE COURT:  You want to talk to your lawyer so he can

18   explain to you what a felony is?

19             DEFENDANT GUZMAN:  Yes.

20             THE COURT:  Okay.  Go ahead.

21                  (Short pause in proceedings.)

22             THE COURT:  Mr. Tucker, do you have any history of

23   mental illness?

24             DEFENDANT TUCKER:  No, Your Honor.

25             THE COURT:  Ever seen a psychiatrist?
```

```
 1                DEFENDANT TUCKER:  No, Your Honor.

 2                THE COURT:  Were you under the influence of drugs or

 3     alcohol when this crime occurred?

 4                DEFENDANT TUCKER:  No, Your Honor.

 5                THE COURT:  Are you now under the influence of any

 6     drugs or intoxicants that would affect your understanding of

 7     these proceedings?

 8                DEFENDANT TUCKER:  No, Your Honor.

 9                THE COURT:  Can you hear me okay?

10                DEFENDANT TUCKER:  Yes, Your Honor.

11                THE COURT:  Understand me okay?

12                DEFENDANT TUCKER:  Yes, I do, Your Honor.

13                THE COURT:  Is there anything wrong with you mentally

14     or physically which would prevent you from understanding this

15     proceeding?

16                DEFENDANT TUCKER:  No, Your Honor.

17                THE COURT:  Do you feel like you're in full

18     possession of your faculties at this time?

19                DEFENDANT TUCKER:  Yes, Your Honor.

20                THE COURT:  You've heard the announcement of the

21     attorneys as to your open plea.  Is that your understanding of

22     what you're doing here today?

23                DEFENDANT TUCKER:  Yes, Your Honor.

24                THE COURT:  Did you discuss that with your attorneys?

25                DEFENDANT TUCKER:  Yes, I did, Your Honor.
```

1        THE COURT:  Did your attorneys or anyone else make

2   any promises to you in private other than what was announced

3   here in open court?

4        DEFENDANT TUCKER:  No, Your Honor.

5        THE COURT:  Did your attorney or anyone else threaten

6   you to force you to enter this guilty plea?

7        DEFENDANT TUCKER:  No, Your Honor.

8        THE COURT:  Are you satisfied with the advice of your

9   attorneys?

10       DEFENDANT TUCKER:  Yes, Your Honor.

11       THE COURT:  Your lawyers have only been working on

12  your case for a short period of time.  Do you understand by

13  pleading guilty here today, you may not be giving them a chance

14  to finish any investigation that they may have otherwise wanted

15  to have conducted?  Is this what you want to do, plead guilty

16  and finish up the case here today except for sentencing in

17  October?

18       DEFENDANT TUCKER:  Yes, Your Honor.

19       THE COURT:  Did you say it was okay with you for your

20  lawyers to make the announcement changing your plea from not

21  guilty to guilty?

22       DEFENDANT TUCKER:  I'm sorry, I didn't hear all of

23  that, Your Honor.  May you repeat?

24       THE COURT:  At your arraignment, the lawyers would

25  have pled you not guilty.  Did you say it was okay with you for

1   them to change that to guilty today?

2         DEFENDANT TUCKER:  Yes, Your Honor.

3         THE COURT:  And are you pleading guilty because you

4   are guilty of making a false statement to a Federal agent?

5         DEFENDANT TUCKER:  Yes, Your Honor.

6         THE COURT:  Before entering this plea of guilty, have

7   you had enough time to discuss with your attorneys the nature

8   of the charge, any possible defenses you might have and your

9   chances of winning your case at trial?

10        DEFENDANT TUCKER:  Yes, Your Honor.

11        THE COURT:  Do you need any more time to discuss any

12  of those things or anything else with your lawyer?

13        DEFENDANT TUCKER:  No, Your Honor.

14        THE COURT:  I have before me a waiver of indictment

15  signed by Judge Torres.  Is that your signature on July 1st

16  there?

17        DEFENDANT TUCKER:  Yes, it is, Your Honor.

18        THE COURT:  And did Judge Torres explain to you that

19  you have the right to be charged by a grand jury indictment on

20  a felony?

21        DEFENDANT TUCKER:  Yes, Your Honor.

22        THE COURT:  And did he explain to you that unless you

23  waive that right, they can't charge you with a felony?

24        DEFENDANT TUCKER:  Yes, Your Honor.

25        THE COURT:  And unless a majority of twelve or more

1    of the grand jurors voted to indict you, you couldn't be

2    charged with a felony.  Do you understand that?

3         DEFENDANT TUCKER:  Yes, Your Honor.

4         THE COURT:  And did you waive the filing of an

5    indictment and agree to an information being filed?

6         DEFENDANT TUCKER:  Yes, Your Honor.

7         THE COURT:  Is this what you want to do, plead guilty

8    to the information where the U.S. Attorney charges that on or

9    about July 11th of 2019, in Miami-Dade County in the Southern

10   District of Florida and elsewhere in the matter within the

11   jurisdiction of the United States Fish and Wildlife Service, an

12   agency of the Executive Branch the Government of the United

13   States, that you did knowingly and willfully make a false,

14   fictitious and fraudulent statement and representation as to a

15   material fact in that you represented to the special agent that

16   foreign supplier site visits were not memorialized in written

17   audit reports when in the truth, in fact, as you then well

18   knew, preparation and submission of site visit reports was a

19   standard procedure at your employer, Orient Bioresearch Center.

20   Is that what you want to do, plead guilty to that charge?

21        DEFENDANT TUCKER:  Yes, Your Honor.

22        THE COURT:  And do you understand the maximum penalty

23   is five years in prison?

24        DEFENDANT TUCKER:  Yes, Your Honor.

25        THE COURT:  But by your open plea, you're hoping I'm

```
 1   going to give you a break in the case, is that correct?

 2            DEFENDANT TUCKER:  Yes, Your Honor.

 3            THE COURT:  Mr. Guzman Guzman, have you had some more

 4   time to talk to your lawyer about what a felony is?

 5            DEFENDANT GUZMAN:  Yes, that's right.

 6            THE COURT:  Do you now understand what a felony is?

 7            DEFENDANT GUZMAN:  That's right, yes.

 8            THE COURT:  Do you have any history of mental

 9   illness, Mr. Guzman Guzman?

10            DEFENDANT GUZMAN:  No.

11            THE COURT:  Ever seen a psychiatrist?

12            DEFENDANT GUZMAN:  No.

13            THE COURT:  Were you under the influence of drugs or

14   alcohol when this crime occurred?

15            DEFENDANT GUZMAN:  No.

16            THE COURT:  Are you now under the influence of any

17   drugs or intoxicants that would affect your understanding of

18   these proceedings?

19            DEFENDANT GUZMAN:  No.

20            THE COURT:  Have you taken any medicine at all today?

21            DEFENDANT GUZMAN:  No.

22            THE COURT:  I forgot to ask Mr. Tucker, have you

23   taken any medicine at all today, Mr. Tucker?

24            DEFENDANT TUCKER:  Yes.  I have acid reflux.  I took

25   a pill this morning, yes, sir.
```

1          THE COURT:  Is that affecting the way you're thinking

2    here today?

3          DEFENDANT TUCKER:  No, Your Honor.

4          THE COURT:  You're okay to make this important

5    decision here today?

6          DEFENDANT TUCKER:  Yes, Your Honor.

7          THE COURT:  Mr. Guzman Guzman, can you hear me okay

8    and understand me okay through the interpreter?

9          DEFENDANT GUZMAN:  Yes.

10          THE COURT:  Is there anything wrong with you mentally

11    or physically which would prevent you from understanding this

12    proceeding, Mr. Guzman Guzman?

13          DEFENDANT GUZMAN:  No, no.

14          THE COURT:  Do you feel like you're in full

15    possession of your faculties at this time?

16          DEFENDANT GUZMAN:  Yes.

17          THE COURT:  You've heard the announcement of the

18    attorney as to your open plea.  Is that your understanding of

19    what you're doing here today, Mr. Guzman Guzman?

20          DEFENDANT GUZMAN:  That's right.

21          THE COURT:  Did you discuss that with your lawyer?

22          DEFENDANT GUZMAN:  Yes.

23          THE COURT:  Did your attorney or anyone else make any

24    promises to you in private other than what was announced here

25    in open court, Mr. Guzman Guzman?

```
 1              DEFENDANT GUZMAN:  No.

 2              THE COURT:  Did your attorney or anyone else threaten

 3    you or force you to enter this guilty plea?

 4              DEFENDANT GUZMAN:  No.

 5              THE COURT:  Are you satisfied with the advice of your

 6    attorney?

 7              DEFENDANT GUZMAN:  That's right.  I am happy with

 8    him.

 9              THE COURT:  Now, your lawyer's only been working on

10    your case for a short period of time.  Do you understand by

11    pleading guilty here, you may not be giving him a chance to

12    finish any investigation that he might have otherwise wanted to

13    have conducted?  Is this what you want to do, plead guilty and

14    finish up the case here today except for sentencing in October?

15              DEFENDANT GUZMAN:  That's right, yes.

16              THE COURT:  Did you say it was okay with you for your

17    lawyer to make the announcement changing your plea from not

18    guilty to guilty?

19              DEFENDANT GUZMAN:  I'm sorry?

20              THE COURT:  At your arraignment, your lawyer pled you

21    not guilty.  Today, he says you want to change that to guilty.

22    Is that okay with you?

23              DEFENDANT GUZMAN:  Yes.

24              THE COURT:  And are you pleading guilty because you

25    are guilty of conspiracy to possess with the intent to
```

 1  distribute five kilograms or more cocaine and 1000 kilograms or

 2  more of marijuana while onboard a vessel subject to the

 3  jurisdiction of the United States?

 4        DEFENDANT GUZMAN:  Yes.

 5        THE COURT:  Now, before entering this plea of guilty,

 6  have you had enough time to discuss with your attorney the

 7  nature of the charges, any possible defenses you might have and

 8  your chances of winning your case at trial?

 9        DEFENDANT GUZMAN:  Yes.

10        THE COURT:  Do you need any more to discuss any of

11  those things or anything else with your lawyer?

12        DEFENDANT GUZMAN:  No.  It's all right.

13        THE COURT:  Is this what you want to do, plead guilty

14  to the indictment where the grand jury charges that you and

15  Jose Gomez Matarrita and Richard Jesus Quesada Sanchez,

16  beginning on an unknown day and continuing through March 17th

17  of this year upon the high seas and elsewhere outside the

18  jurisdiction of the United States, that you did knowingly and

19  willfully combine, conspire, confederate and agree with each

20  other and with other persons known and unknown to the grand

21  jury, to possess with the intent to distribute a controlled

22  substance while onboard a vessel subject to the jurisdiction of

23  the United States, and that the controlled substance involved

24  in the conspiracy or attributable to you as a result of your

25  own conduct and the conduct of the others reasonably

1   foreseeable to you was five kilograms or more of a mixture or

2   substance containing a detectable amount of cocaine, and

3   1000 kilograms or more of a mixture or substance containing a

4   detectable amount of marijuana.  Is that what you want to do,

5   plead guilty to that charge?

6           DEFENDANT GUZMAN:  Yes.

7           THE COURT:  And do you understand the maximum penalty

8   is life in prison with a ten-year mandatory minimum?

9           DEFENDANT GUZMAN:  Of course I understand, yes.

10          THE COURT:  But by your open plea, you're hoping I'm

11  going to give you a break in the case, is that correct?

12          DEFENDANT GUZMAN:  Yes.

13          THE COURT:  Count 2 charges on March 17th, you

14  possessed with the intent to distribute the same amount of

15  cocaine and marijuana as I just read to you in the same

16  circumstances which would also carry a maximum of life in

17  prison with a ten-year mandatory minimum but by your plea here

18  today, the Government's going to move to dismiss Count 2 at the

19  time of sentencing.  Is that your understanding?

20          DEFENDANT GUZMAN:  That's right.

21          THE COURT:  There's also a forfeiture count.  Has

22  someone translated the forfeiture count to you?

23          DEFENDANT GUZMAN:  Could you repeat that, please?

24          THE COURT:  There's a forfeiture count that the

25  Government really doesn't think there's anything to forfeit.

```
1   Has someone translated and read the forfeiture count to you?

2              DEFENDANT GUZMAN:  Yes, yes.

3              THE COURT:  Do you need me to read that to you at

4   this time?

5              DEFENDANT GUZMAN:  No, no, no.  I understand.

6              THE COURT:  Now, when you plead guilty, you give up

7   certain Constitutional rights.  You give up your right to a

8   trial by jury and the right to the assistance of a lawyer

9   during that trial.  Do you understand that, Mr. Tucker?

10             DEFENDANT TUCKER:  Yes, Your Honor.

11             THE COURT:  Mr. Guzman Guzman?

12             DEFENDANT GUZMAN:  Yes.

13             THE COURT:  You understand that you give up your

14  right to persist in your not guilty plea, Mr. Tucker?

15             DEFENDANT TUCKER:  Yes, Your Honor.

16             THE COURT:  Mr. Guzman Guzman?

17             DEFENDANT GUZMAN:  Yes, I understand.

18             THE COURT:  Do you understand that you give up your

19  right to require the Government to prove your guilt beyond and

20  to the exclusion of every reasonable doubt, Mr. Tucker?

21             DEFENDANT TUCKER:  Yes, Your Honor.

22             THE COURT:  Mr. Guzman Guzman?

23             DEFENDANT GUZMAN:  Yes, yes.

24             THE COURT:  You have the right to counsel.  If

25  necessary, the right to appointed counsel at trial and at every
```

1    other stage of the proceedings.  Do you understand that,

2    Mr. Tucker?

3              DEFENDANT TUCKER:  Yes, Your Honor.

4              THE COURT:  Mr. Guzman Guzman?

5              DEFENDANT GUZMAN:  That's right, yes.

6              THE COURT:  Do you understand that you give up your

7    right to confront, that is to see, hear and cross-examine the

8    Government witnesses, Mr. Tucker?

9              DEFENDANT TUCKER:  Yes, Your Honor.

10             THE COURT:  Mr. Guzman Guzman?

11             DEFENDANT GUZMAN:  That's right.

12             THE COURT:  Do you understand that you give up your

13   right to compel, that is to require the attendance of witnesses

14   to come to court and to testify in your defense, Mr. Tucker?

15             DEFENDANT TUCKER:  Yes, Your Honor.

16             THE COURT:  Mr. Guzman Guzman?

17             DEFENDANT GUZMAN:  Yes, I understand.  Of course.

18             THE COURT:  You understand that you give up your

19   right to refuse to testify, that is you give up your right to

20   remain silent which is also sometimes called the right against

21   self-incrimination, Mr. Tucker?

22             DEFENDANT TUCKER:  Yes, Your Honor.

23             THE COURT:  Mr. Guzman Guzman?

24             DEFENDANT GUZMAN:  Yes, that's right.

25             THE COURT:  That means if you went to trial, you

```
 1    would have had the right on your own part to decline to testify
 2    unless you voluntarily elected to do so in your own defense.
 3    Do you understand that, Mr. Tucker?
 4              DEFENDANT TUCKER:  Yes, Your Honor.
 5              THE COURT:  Mr. Guzman Guzman?
 6              DEFENDANT GUZMAN:  Yes.
 7              THE COURT:  And if you decided not to testify at a
 8    trial, or if you decided not to call any witnesses, or if you
 9    decided not to put on any evidence, those facts couldn't have
10    been used against you at a trial.  Do you understand that,
11    Mr. Tucker?
12              DEFENDANT TUCKER:  Yes, Your Honor.
13              THE COURT:  Mr. Guzman Guzman?
14              DEFENDANT GUZMAN:  That's right.
15              THE COURT:  You also understand that you give up your
16    right to appeal any matter related to your case, including any
17    judgment and sentence which the Court may impose except as to
18    the validity of the sentence, Mr. Tucker?
19              DEFENDANT TUCKER:  Yes, Your Honor.
20              THE COURT:  And Mr. Guzman Guzman?
21              DEFENDANT GUZMAN:  Yes.
22              THE COURT:  That means if you went to trial and got
23    convicted, you could have taken an appeal saying that the jury
24    wasn't fair or I wasn't fair, but when you plead guilty, you
25    give up that right to appeal.  Do you understand that,
```

```
1    Mr. Tucker?

2              DEFENDANT TUCKER:  Yes, Your Honor.

3              THE COURT:  Mr. Guzman Guzman?

4              DEFENDANT GUZMAN:  That's right, yes.

5              THE COURT:  And do you understand that if you're not

6    a natural born American citizen, that by pleading guilty to a

7    crime, it can affect your citizenship rights and it can lead to

8    deportation or removal, Mr. Tucker?

9              DEFENDANT TUCKER:  Yes, Your Honor.

10             THE COURT:  And we've already talked about that with

11   Mr. Guzman Guzman.

12             DEFENDANT GUZMAN:  Yes, yes, of course.

13             THE COURT:  Understanding all these rights, is this

14   what you want to do, give up all these rights and enter this

15   guilty plea here today, Mr. Tucker?

16             DEFENDANT TUCKER:  Yes, Your Honor.

17             THE COURT:  And Mr. Guzman Guzman?

18             DEFENDANT GUZMAN:  That's right.

19             THE COURT:  Do you understand that you're making that

20   decision today to give up all these rights, you can't come back

21   tomorrow, next week or next year and say, Judge, I made a

22   mistake, I didn't know what was going on on August the 4th.  My

23   lawyer was no good.  I wasn't thinking clearly because of

24   COVID-19 or any one of a number of other reasons.  Are you

25   making a decision today that you're willing to live by,
```

1    Mr. Tucker?

2             DEFENDANT TUCKER:  Yes, Your Honor.

3             THE COURT:  And Mr. Guzman Guzman?

4             DEFENDANT GUZMAN:  That's right.

5             THE COURT:  Will the Government summarize the facts

6    as to Mr. Tucker's case?

7             MR. WATTS-FITZGERALD:  Yes, Your Honor.  Yes, Your

8    Honor.  Thank you.  Your Honor, with respect to Mr. Tucker, as

9    noted in the one count of the information and the executed

10   joint factual statement before the Court, in July of 2019, the

11   defendant participated voluntarily in an interview conducted by

12   special agents of the United States Fish and Wildlife Service

13   within the Department of the Interior.

14        The Fish and Wildlife Service is specifically

15   authorized and directed by Congress through the Endangered

16   Species Act in Title 16 as the agency tasked to administer and

17   enforce the provisions of the Convention on International Trade

18   and Endangered Species of Wild Fauna and Flora, a multinational

19   and international agreement to which the United States has been

20   a party since 1975, I believe.

21             Under that agreement or that directive, the agents

22   were conducting an investigation into a number of issues

23   including the procurement of longtailed macaques which is a

24   type of small non-human primate indigenous to southeast Asia

25   and some other limited areas.  It's regularly employed in

1   research in the United States and around the world among other

2   things with respect to pharmaceuticals and other products.

3          In the course of the interview, the defendant

4   responded to specific questions regarding audits and site

5   visits by he and other employees of his company, OVRC to

6   supplier sites in Cambodia.  This was central to the agents'

7   inquiry and to the investigation then underway in the Southern

8   District of Florida and elsewhere.

9          The agents specifically asked the defendant if such

10  audit report or site visit reports of any description that were

11  prepared and submitted to the company to which he responded in

12  the negative, that none -- none such written reports existed

13  and had been made to the company.

14         The defendant then and there well knew that, in fact,

15  the prep and submission of such site visits was a standard

16  procedure at the company making his statement materially false

17  in a manner within the jurisdiction of the Federal agency as

18  charged in the single count of the information.  Thank you,

19  Your Honor.

20         THE COURT:  Do you take any exception or objection to

21  the facts as summarized as to your client, Mr. West?

22         MR. WEST:  No, Your Honor.  Thank you.

23         THE COURT:  Mr. Greenberg?

24         MR. GREENBERG:  No, Your Honor.

25         THE COURT:  And Mr. Lopez?

1          MR. LOPEZ:  No, Your Honor.  Thank you.

2          THE COURT:  And do you stipulate that had the case

3   gone to trial, I would have sent your client's case to the

4   jury, Mr. West?

5          MR. WEST:  Yes, Your Honor.

6          THE COURT:  Mr. Greenberg?

7          MR. GREENBERG:  Yes, Your Honor.

8          THE COURT:  Mr. Lopez?

9          MR. LOPEZ:  Yes, Your Honor.

10          THE COURT:  And do you stipulate that

11   Mr. Watts-Fitzgerald's factual recitation contains the

12   essential elements of the crime, Mr. West?

13          MR. WEST:  Yes, Your Honor.

14          THE COURT:  Mr. Greenberg?

15          MR. GREENBERG:  Yes, Your Honor.

16          THE COURT:  Mr. Lopez?

17          MR. LOPEZ:  Yes, Your Honor.

18          THE COURT:  Mr. Tucker, do you now admit to

19   committing the acts as set forth in the charge and to which you

20   have pled guilty?

21          DEFENDANT TUCKER:  Yes, I do, Your Honor.

22          THE COURT:  Do you understand if you went to trial,

23   the Government would have had to have proven each essential

24   element of the crime beyond a reasonable doubt?

25          DEFENDANT TUCKER:  Yes, Your Honor.

```
 1              THE COURT:  And do you understand the elements of the

 2  crime?

 3              DEFENDANT TUCKER:  Yes.

 4              THE COURT:  For example, the Government would have

 5  had to have proven that you made a statement as charged and the

 6  statement was false, that the falsity concerned a material

 7  matter, that you acted willfully knowing that the statement was

 8  false, and the statement was made or used for a matter within

 9  the jurisdiction of a department or agency in the United

10  States.  Do you understand the elements of the crime?

11              DEFENDANT TUCKER:  Yes.

12              THE COURT:  Do you also understand that when you

13  plead guilty, you give up any and all defenses to this charge?

14              DEFENDANT TUCKER:  Yes, Your Honor.

15              THE COURT:  And is that what you want to do?

16              DEFENDANT TUCKER:  Yes, Your Honor.

17              THE COURT:  Will the Government summarize the facts

18  as to Mr. Guzman Guzman's case?

19              MS. RODRIGUEZ-SCHACK:  Certainly, Your Honor.  Thank

20  you.  Should this case have proceeded to trial, the United

21  States would be able to prove the following beyond a reasonable

22  doubt.

23              That on or about March 17th, 2021, while on patrol in

24  the eastern pacific ocean, a United States Marine patrol

25  aircraft detected a go-fast vessel approximately 60 nautical
```

1    miles south of Los Santos, Panama in international waters and

2    upon the high seas.

3           The go-fast vessel was traveling northbound at a high

4    rate of speed, was in a known drug trafficking area and did not

5    display any indicia of nationality.

6           The United States Navel Vessel, Freedom, which was in

7    the area with a United States Law Enforcement Detachment Team

8    on board was diverted to investigate.

9           Freedom launched their helicopter.  Freedom requested

10   and was granted a Statement of No Objection and authorized

11   employed use of force up to and including warning shots and

12   disabling fire upon the go-fast vessel.  When the helicopter

13   arrived on scene and went overt, the go-fast vessel --

14          THE COURT:  You're breaking up.  You're breaking up,

15   Ms. Rodriguez-Schack.  I wasn't going to say anything but I'm

16   assuming you're just reading the factual proffer but the court

17   reporter can't hear you.

18          MS. RODRIGUEZ-SCHACK:  I'm sorry.  I was, in fact,

19   reading the factual proffer.  Did you want me to start again

20   or -- do you want me to start again, or does the Court wish to

21   read it into the record for the defendant?  I don't know if I'm

22   having problems with connectivity.

23          MR. WATTS-FITZGERALD:  Your Honor, if I may, if we

24   have a copy in the courtroom, I could do it here for you.

25          THE COURT:  Yeah, we do.

1            MS. RODRIGUEZ-SCHACK:  Thank you.

2            MR. WATTS-FITZGERALD:  Your Honor, on March 17th,

3    2021, in the eastern pacific, and I will summarize the

4    stipulated factual proffer placed before the Court.

5            U.S. Navel Vessel Freedom was directed to an area to

6    intercept and investigate a go-fast vessel approximately six

7    nautical miles south of Los Santos, Panama in international

8    waters and upon the high seas.

9            Freedom had embarked on board a coast guard law

10   enforcement detachment and upon arriving in the area, the navel

11   vessel launched its aircraft.  They also requested and received

12   a Statement of No Objection through the standard procedure with

13   the Department of State and the U.S. Coast Guard.

14           Overhead, the go-fast vessel came under order after

15   the use of force which had been authorized to the vessel, a

16   small boat was launched with a boarding team and upon arrival,

17   the boarding team observed packages on board in plain view.  On

18   board the vessel, three individuals later identified, one of

19   whom was Antonio Guzman Guzman here before the Court, all Costa

20   Rican nationals.

21           He was not, however, the skipper of the vessel.  The

22   Coast Guard contacted the Government in Costa Rica that could

23   neither confirm or deny the nationality of the vessel.  Based

24   on that response, the vessel was treated as a vessel without

25   nationality and, therefore, subject to the jurisdiction of the

1    United States under domestic and international law and a full

2    law enforcement boarding was conducted.

3         The Coast Guard boarding team recovered approximately

4    240 kilograms of suspected cocaine and 1,695 kilos of suspected

5    marijuana.  Positive field test as to both substances were

6    conducted on scene and the individuals and the contraband were

7    transferred to the Navel Vessel, Freedom, and the parties have

8    jointly agreed and stipulated there's a sufficient factual

9    basis for the Court to make the finding that the vessel is a

10   vessel without nationality, and thus, pursuant to Title 46,

11   U.S. Code Section 7502(c) subject to the jurisdiction of the

12   United States.  Thank you, Your Honor.

13        THE COURT:  If you pass back up the factual proffer.

14   Mr. Matters, do you take any exception or objection to the

15   facts as summarized?

16        MR. MATTERS:  No, I do not, Your Honor.

17        THE COURT:  And do you stipulate that had the case

18   gone to trial, I would have sent Mr. Guzman Guzman's case to

19   the jury?

20        MR. MATTERS:  Yes, Your Honor.

21        THE COURT:  Do you stipulate that

22   Mr. Watts-Fitzgerald's factual recitation contains the

23   essential elements of the crime?

24        MR. MATTERS:  I do.

25        THE COURT:  Mr. Guzman Guzman, do you now admit to

1   committing the acts as set forth in the charge?

2           DEFENDANT GUZMAN:  That's right.

3           THE COURT:  And do you understand if you went to

4   trial, the Government would have had to have proven each

5   essential element of the crime beyond a reasonable doubt?

6           DEFENDANT GUZMAN:  Yes.

7           THE COURT:  And do you understand the elements of the

8   crime?

9           DEFENDANT GUZMAN:  Yes.

10          THE COURT:  For example, the Government would have

11  had to have proven that two or more people in some way agreed

12  to try to accomplish a shared and unlawful plan to possess with

13  the intent to distribute cocaine and marijuana, that you knew

14  the unlawful purpose of the plan and willfully joined in it,

15  and the object of the unlawful plan was to possess with the

16  intent to distribute five kilograms or more of cocaine and

17  1000 kilograms or more of marijuana while on board a vessel

18  subject to the jurisdiction of the United States.

19          Do you understand the elements of the crime?

20          DEFENDANT GUZMAN:  That's right.

21          THE COURT:  You also understand that when you plead

22  guilty, you give up any and all defenses to this charge?

23          DEFENDANT GUZMAN:  Yes.

24          THE COURT:  For example, your lawyer could have

25  argued that your go-fast boat was a Costa Rican vessel, and

```
 1   that you shouldn't have been deemed a vessel without a nation
 2   or there may have been other defenses in this case.
 3             But if you plead guilty, you give up any and all
 4   defenses.  Do you understand that?
 5             DEFENDANT GUZMAN:  That's right.
 6             THE COURT:  Is that what you want to do?
 7             DEFENDANT GUZMAN:  Yes.
 8             THE COURT:  All right.  There being no exception or
 9   objection to the facts as summarized, there having been a
10   stipulated factual basis, I find the facts which the Government
11   is prepared to prove are sufficient to constitute the crimes of
12   making a false statement to a Federal agent as to Mr. Tucker,
13   and conspiracy to possess with the intent to distribute five
14   kilograms or more of cocaine and 1000 kilograms or more of
15   marijuana while a board a vessel subject to the jurisdiction of
16   the United States as to Mr. Guzman Guzman.
17             Let the record reflect that I find both defendants
18   alert and intelligent.  I further find that the defendants have
19   freely, voluntarily and intelligently entered their pleas of
20   guilty based upon the open pleas announced here earlier with no
21   promises or threats, without any mental impediment of any kind.
22             I further find that the defendants have had the advice
23   and counsel of competent lawyers with whom they say they are
24   satisfied.
25             Having found the facts to be sufficient to accept such
```

```
 1   a plea, I'll ask you one more time if it is still your desire
 2   plead guilty as previously announced, Mr. Tucker?
 3            DEFENDANT TUCKER:  Yes, Your Honor.
 4            THE COURT:  And Mr. Guzman Guzman?
 5            DEFENDANT GUZMAN:  Yes.
 6            THE COURT:  Are you satisfied that your client
 7   understands the charges and the consequences of his plea,
 8   Mr. West?
 9            MR. WEST:  Yes, Your Honor.
10            THE COURT:  Mr. Greenberg?
11            MR. GREENBERG:  Yes, Your Honor.
12            THE COURT:  Mr. Lopez?
13            MR. LOPEZ:  Yes, Your Honor.
14            THE COURT:  Mr. Matters?
15            MR. MATTERS:  Yes, Your Honor.
16            THE COURT:  Do you fully understand what's going on
17   at this proceeding, Mr. Tucker?
18            DEFENDANT TUCKER:  Yes, Your Honor.
19            THE COURT:  Mr. Guzman Guzman?
20            DEFENDANT GUZMAN:  Yes.
21            THE COURT:  Do you have any questions to ask me about
22   what's gone on in your case so far today, Mr. Tucker?
23            DEFENDANT TUCKER:  I do not, Your Honor.
24            THE COURT:  Mr. Guzman Guzman?
25            DEFENDANT GUZMAN:  No.
```

1          THE COURT:  I find that you, Gary Tucker, and that

2     you, Gonzalo Antonio Guzman Guzman, understand the nature of

3     the charges against you and appreciate the consequences of

4     pleading guilty; that you understand that by pleading guilty,

5     that you waive each and every one of the rights of a defendant

6     that I've already mentioned to you and that you have knowingly,

7     intelligently and voluntarily waived these rights and the Court

8     hereby accepts your guilty plea.

9          At this time, I'm going to adjudicate both of you

10    guilty, defer sentencing, order a Presentence Investigation

11    report, set sentencing for October 13th at 1:15 in the

12    afternoon here in this courtroom on Mr. Guzman Guzman.

13         Mr. Guzman Guzman, someone from the probation

14    department might be coming up to the jail to interview you.  If

15    they do, I need you to be open and honest with them so I can

16    find out as much I can about you so that I can make a fair

17    decision in October.

18         Is there anything else we need to discuss on

19    Mr. Guzman Guzman's case, Mr. Rodriguez-Schack?

20         MS. RODRIGUEZ-SCHACK:  No, thank you, Your Honor.

21         THE COURT:  Mr. Matters?

22         MR. MATTERS:  No, Your Honor.

23         THE COURT:  Anything else you want to say, Mr. Guzman

24    Guzman?

25         DEFENDANT GUZMAN:  No.

1          THE COURT:  We'll see everybody back October 13th at

2     1:15.

3          Mr. Tucker, you'll need to go to the probation

4     department today and they'll explain how you can cooperate with

5     them when they're conducting this background check.  I need you

6     to be open and honest with them so that I can find out as much

7     I can about you so that I can make a fair decision in October.

8          If you were not to cooperate with them, if you were

9     not to show up or if you were to get yourself arrested between

10    now and sentencing, obviously any of those three things would

11    not go very well for you on your open plea.  Do you understand

12    that, Mr. Tucker?

13         DEFENDANT TUCKER:  Yes, Your Honor.

14         THE COURT:  Is there anything else we need to discuss

15    on Mr. Tucker's case, Mr. Watts-Fitzgerald?

16         MR. WATTS-FITZGERALD:  Nothing, Your Honor.  Thank

17    you.

18         THE COURT:  Mr. West?

19         MR. WEST:  No, Your Honor.  Thank you.

20         THE COURT:  Mr. Greenberg?

21         MR. GREENBERG:  No, Your Honor.

22         THE COURT:  Mr. Lopez?

23         MR. LOPEZ:  No, Your Honor.  Thank you.

24         THE COURT:  Anything else you want to say,

25    Mr. Tucker?

```
 1              DEFENDANT TUCKER:  No, Your Honor.

 2              THE COURT:  We'll see everybody back October 13th at

 3   1:30 and we'll be in recess.

 4       (Thereupon, this proceeding was adjourned at 11:25 a.m.)

 5                            - - -

 6

 7                  C-E-R-T-I-F-I-C-A-T-E

 8

 9       I hereby certify that the foregoing is an accurate

10   transcription of the proceedings in the above-entitled matter.

11

12

13   SEPTEMBER 20, 2O21    /s:/Ellen A. Rassie_____
                           ELLEN A. RASSIE, RMR-CRR
14                         Official Court Reporter
                           To the Honorable Rodney Smith
15                         299 East Broward Blvd., Room 202B
                           Ft. Lauderdale, Florida  33301
16                         (954)769-5448

17

18

19

20

21

22

23

24

25
```