IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GARY TUCKER,<br><br>*Defendant*. | No. 21-20263-CR-DIMITROULEAS<br><br>**The Honorable William P. Dimitrouleas** |

**GARY TUCKER'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF PROBATION**

October 7, 2021

Jonathan E. Lopez
Taylor S. West
Allen & Overy LLP
1101 New York Avenue, NW
Washington, D.C. 20005
(202) 683-3800

Gerald E. Greenberg
Daniel S. Gelber
Gelber Schachter & Greenberg, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131-1715
(305) 728-0950

*Counsel for Gary Tucker*

**INTRODUCTION**

Gary Tucker is a 64-year-old man and a native of upstate New York who has no prior criminal history and poses no threat to the community. Gary made a terrible error in judgment by lying to federal agents about a material fact in their investigation, and he accepts full responsibility for his conduct. Gary is remorseful and embarrassed by his actions and apologizes to the Court, the U.S. Fish & Wildlife Service ("USFWS"), the Department of Justice ("DOJ"), and his family.

Gary voluntarily surrendered in this case on July 6, 2021, signed a written Plea Agreement and Joint Factual Statement, and pled guilty on August 4, 2021 to a violation of 18 U.S.C. §1001(a)(2). In its Presentence Investigation Report ("PSI"), the U.S. Probation Office recommended a total offense level of four and advisory Guidelines range of 0-6 months' imprisonment. Neither side has filed any objection. The advisory Guidelines range places Gary firmly within Zone A of the Sentencing Table, which provides for a range of non-custodial sentences, including straight probation, probation with community confinement or home detention, or a combination of the above. *See* U.S.S.G. § 5B1.1. In addition, in Zone A cases involving a non-violent first offender, which is the case here, the Sentencing Guidelines encourage the Court to consider a sentence other than imprisonment. *See id.* § 5C1.1 cmt. n.4 (stating that a "court should consider imposing a sentence other than a sentence of imprisonment" when "the defendant is a nonviolent first offender" and the Guidelines range is in Zone A). Indeed, and as noted below, we believe that a term of straight probation is the appropriate outcome in this case and a sentence that is "sufficient, but not greater than necessary," to achieve the goals of sentencing. *See* 18 U.S.C. § 3553(a).

Gary is Vice President of Orient BioResource Center ("OBRC"), which is a CDC and USDA licensed company that procures non-human primates from abroad and then supplies them to U.S. research institutions for scientific and medical research to develop, among other things,

1

vaccines.[1]  *See, e.g.*, *Coronavirus Studies in Nonhuman Primate Models*, Nat'l Insts. of Health, https://orip.nih.gov/non-human-primate-models (last visited Sept. 22, 2021).  The importation of non-human primates in this regard is legal under U.S. and international law, though the activity is highly regulated and often scrutinized by animal rights organizations that object to the use of animals in scientific and medical research.

The conduct at issue in this case arose from the U.S. Attorney's Office for the Southern District of Florida and the USFWS's ongoing investigation into the non-human primate importation industry (the "industry").  Specifically, to the best of counsel's understanding, the Government has been investigating whether foreign exporters and, potentially, U.S. importers are improperly importing wild-caught non-human primates into the United States despite the animals being labeled as captive bred in regulatory and related documents.  As part of that investigation, Gary agreed to a voluntary interview during which USFWS Special Agents asked Gary about the existence of audit and site visit reports that he and other employees of OBRC prepared regarding suppliers of non-human primates.  At that interview, Gary falsely and intentionally denied the existence of those reports.  Gary knew that OBRC employees regularly prepared audit and site visit reports regarding suppliers, which he should have explained to the USFWS Special Agents.

While Gary unquestionably made false statements, his conduct did not include the typical aggravating factors that exist in many false statement cases.  Gary's conduct was not a calculated ploy to cover up illegal activity, such as the illicit importation of wild-caught non-human primates.  Rather, Gary's conduct, while intentional, was impulsive and illogical.  It largely derived from his long-held belief that audit and site visit reports contain sensitive supplier information that, if

---

[1] These non-human primates are imported for medical and scientific research only, not for use with regard to cosmetics.

released, animal rights organizations could take out of context and unfairly use to undermine the industry.

Gary's actions during the interview will have life-changing and serious consequences that will follow him for the rest of his life, including being classified as a "felon" with its attendant ripple effects and stigma. But Gary's conduct was a substantial deviation from 64 years of a life otherwise characterized by perseverance in the face of tragedy, hard work, and initiative. Gary's personal characteristics, the fact that non-custodial sentences are ordered in the majority of false statement cases, the commentary to the Sentencing Guidelines regarding non-custodial sentences being particularly appropriate in these circumstances, and the harmful consequences that will already flow from a felony conviction—among the many other reasons detailed below—all weigh in favor of a non-custodial sentence. Therefore, we respectfully ask the Court to issue a within-Guidelines sentence of probation.

## BACKGROUND

### I. Gary's Background

#### A. Early Life and Education

Gary was raised on a dairy farm in Swain, New York, which had a population of approximately 43 people at the time. Although Gary describes his childhood as generally "happy," it was marked by the tragic and unexpected death of his father, who was killed in an automobile accident at age 41. Gary was nine years old at the time of his father's death. Gary was close to his family and relied heavily on their support, including from his brother and sister, who were 16 and 18, respectively, to overcome his father's sudden absence. Gary's sister had just begun college, and the death of Gary's father meant the heavy responsibility of running the family dairy farm fell squarely on Gary's and his brother's shoulders. When Gary's mother married Basil Stiles six years later, she and her new husband moved roughly 45 minutes away from the farm, but Gary

3

and his brother stayed at the farm to keep it going. Gary remembers daily chores on the farm, including before and after school, such as milking cows, feeding and cleaning livestock, plowing fields, and planting and harvesting the farm's crops, which included oats, hay, and buckwheat.

At age 16, Gary began parking cars at a local ski resort to earn extra money. When it became known to management that Gary had extensive experience with heavy equipment due to his responsibilities on the farm, Gary was charged with running snowmobiles, snowcats, and the snowmaking equipment. Gary undertook this work in addition to his substantial responsibilities on the farm. During his college years, Gary continued to work during holiday breaks, including Thanksgiving and Christmas, and weekends to earn money.

From a young age, Gary saw an education as an essential component in bettering himself and achieving prosperity. Despite his responsibilities on the farm, Gary enrolled in a high school that was a 45-minute drive away because it was better than the one located closer to his home. Not having an independent way to get to school, Gary hitchhiked to and from high school, having no real idea how long it would take him to get to school or return home every school day, until his junior year when he received his driver's license. After high school, Gary left the farm and earned an associate's degree at Canton College and a bachelor's degree at Cornell University, both in animal science. During his time at Cornell, Gary joined an honorary fraternity, Alpha Zeta, which required that he be within the top twenty percent of his class.

Gary later obtained a law degree from Western Michigan University in 1994, 15 years after having received his bachelor's degree at Cornell. Looking for ways to further support his family, Gary took evening courses while working full time and raising his two young sons with his wife. After law school, Gary operated his own part-time law practice until 2004 when his day-to-day responsibilities became too extensive to continue his practice. Gary has not practiced law in over

17 years and formally terminated his Michigan law license in July 2021 in connection with his guilty plea.

      **B.**      **Gary's Family Background**

After college, Gary met Susan in upstate New York in 1981 and later married her in 1985. Gary and Susan together raised two good and successful sons. Gary and Susan's eldest son is an assistant professor in emergency medicine at a prestigious medical school where he specializes in the use of ultrasound in treating critically ill patients. Gary and Susan's other son works for a millwright union in Michigan as a construction mechanic, and he specializes in installing industrial equipment. As part of their shared devotion to their sons, Gary and Susan paid for their sons' undergraduate degrees, which, in total, was an approximately $300,000 investment in their futures. Gary also invested significant amounts of time in his sons' lives by, among other things, serving as the head coach of their youth soccer team for almost a decade.

Gary continues to be a source of support for his family, and Gary and Susan live a modest lifestyle exclusively off of Gary's income. In addition, although Gary's elderly mother, who is currently in assisted living in Wellsville, New York, relies primarily on Social Security and her late husband's veterans' benefits, Gary supplements her benefits by paying for household and food items.

**II.**      **The Offense Conduct**

As part of the U.S. Attorney's Office for the Southern District of Florida and the USFWS's ongoing investigation into the potential illegal importation of wild-caught non-human primates into the United States, Gary agreed to a voluntary interview with an Assistant United States Attorney and Special Agents from the USFWS (the "Agents" or the "Special Agents"). During the July 11, 2019 interview, which was conducted in Washington, D.C., the Special Agents asked Gary about the existence of audit reports that he and other employees of OBRC prepared regarding

5

suppliers of non-human primates. Gary indicated that OBRC employees did not prepare reports regarding their audits or site visits of suppliers, which Gary knew was false. Gary knew that the preparation of audit and site visit reports regarding suppliers was a standard practice at OBRC.

### III.    The Plea Agreement and Presentence Report

Pursuant to the Plea Agreement, the parties believe that the applicable Sentencing Guidelines range is 0-6 months' imprisonment. *See* Dkt. 18 at 3. The U.S. Probation Office agreed. As described in the PSI, the U.S. Probation Office determined that the applicable Guidelines range is 0-6 months' imprisonment based on a base offense level of six, a two-level reduction for acceptance of responsibility, and a criminal history category of I (based on Gary having no prior criminal conduct or arrests). *See* Dkt. 26 at 6–7. This determination places Gary squarely within Zone A of the Sentencing Table.

## ARGUMENT

### I.    Legal Standard

A sentencing court's duty is to impose a sentence that is "sufficient, but not greater than necessary" to meet the goals of sentencing. *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)). A sentencing court carries out this duty by conducting a two-step analysis. *See Nelson v. United* States, 555 U.S. 350, 351 (2009). The court must first calculate the applicable Guidelines range, which serves as a "starting point and the initial benchmark" for a sentencing decision, *Gall v. United States*, 552 U.S. 38, 49 (2007), then "consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors" set forth in § 3553(a), *Nelson*, 555 U.S. at 351.

Importantly, if the applicable Guidelines range is in Zone A of the Sentencing Table, as the parties and the U.S. Probation Office recommend is the appropriate range in this case, "a sentence of imprisonment is not required." U.S.S.G. § 5C1.1(b). As previously noted, a court's

6

consideration of a probation sentence is especially apt for defendants who are "nonviolent first offender[s]," such as Gary, with a Guidelines range in Zone A, because a "court should consider imposing a sentence other than a sentence of imprisonment" in those situations.[2] *See id*. § 5C1.1 cmt. n.4.

Pertinent § 3553(a) factors to be considered include: "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1); the need to "reflect the seriousness of the offense," "provide just punishment," "protect the public," provide "adequate deterrence," and "promote respect for the law," § 3553(a)(2)(A)–(C); "the kinds of sentences available," § 3553(a)(3); and the "need to avoid unwarranted sentence disparities," § 3553(a)(6). As discussed further, all of these factors weigh in favor of a sentence of probation. If the Court disagrees, we respectfully request that the Court take advantage of the flexibility Zone A affords and issue, consistent with other false statement cases and the § 3553(a) factors as applied to this case, another form of non-custodial sentence.

    **A.**    **The Nature and Circumstances of the Offense**

        *1.*    *Gary's Offense Conduct*

Gary has, for an extended period of time, viewed the confidentiality of audit or site visit reports as sacrosanct within the industry. Gary's position comes from his concern that the reports often contain sensitive information about suppliers' operations—such as a facility's conditions, a supplier's health program, and potentially pictures of non-human primates or facilities—which animal rights organizations may unfairly take out of context and use to further their publicity

---

[2] In addition to probation, a number of other non-custodial sentences may also be appropriate in Zone A cases. *See* U.S.S.G. § 5B1.1 cmt. n.1(A) ("Where the applicable guideline range is in Zone A of the Sentencing Table . . . a condition requiring a period of community confinement, home detention, or intermittent confinement may be imposed but is not required.").

7

efforts against the industry. Gary foolishly, but intentionally, lied to the Agents in denying the existence of audit or site visit reports when he fully knew that others at OBRC had prepared such reports. Despite Gary's criminal conduct in this regard, Gary did not lie to the Agents to hide evidence of other criminal misconduct, such as the illicit importation of wild-caught non-human primates.[3]

        2.      *Speedy Resolution of Criminal Liability*

After the July 11, 2019 interview, and following further discussions with the Government, Gary's counsel provided a detailed attorney proffer to the Government in February 2020. Shortly after the attorney proffer, the COVID-19 pandemic struck the United States and halted communication between counsel and the Government. The Government contacted counsel in February 2021 (at a point when Gary was in Cambodia for business) indicating a desire to discuss Gary's potential criminal liability. Following conversations between counsel and the Government, a one count information was filed two months later on April 30, 2021. Gary again agreed to a voluntary interview and met with the Government in early May 2021. The Plea Agreement and Joint Factual Statement were signed later that month,[4] Gary surrendered on July 6, and he pled guilty on August 4. Gary takes full personal responsibility for his conduct and has done all he can

---

[3] Unrelated to this matter, Gary recently agreed to assist the USFWS and the Centers for Disease Control and Prevention ("CDC") with the handling of a non-human primate that had been confiscated at the southern border by U.S. Customs and Border Protection from someone who attempted to smuggle the non-human primate into the country. Gary and OBRC assisted with the animal's rehabilitation and health testing, which were all conducted under quarantine, for the USFWS and the CDC. *See Saving J: A Confiscated Spider Monkey Story*, Brevard Zoo, https://brevardzoo.org/saving-j-a-confiscated-spider-monkey-story/ (last visited Sept. 21, 2021).

[4] The Plea Agreement and Joint Factual Statement were originally signed in late May 2021. Due to the Court's requirement that the parties submit documents with original signatures (in other words, scanned versions are unacceptable), the parties re-executed the documents on August 4, 2021. *See* Dkts. 18–19.

to resolve his criminal liability in an efficient manner, including by returning to the United States after traveling abroad with full awareness of his impending criminal liability and meeting with the Government, which the Government acknowledged at Gary's arraignment. *See* Dkt. 22 at 5.

### B. Gary's History and Characteristics

We ask that the Court consider the totality of Gary's life and the manner in which he has lived it. After all, a moment of extraordinarily poor judgment, while justifiably having significant consequences, must be viewed along a lengthy continuum of a life. Regardless of the sentence ultimately imposed, being branded a "felon" is an outcome that will have significant consequences for the remainder of Gary's professional and personal life. Gary's conduct in this case was anomalous in comparison to his 64 years of having otherwise been a law-abiding citizen without any criminal history. *See* Dkt. 26 at 6–7. Indeed, the U.S. Probation Office could not locate so much as a traffic citation related to Gary. *See id.* ¶ 30. To be sure, Gary is an imperfect man, as evidenced by his conduct that led to his conviction in this case. But Gary overcame many obstacles in his early childhood and carved out a meaningful and productive life.

A sentence of probation would allow Gary to contribute his skills and time to the community while adequately serving the goals of sentencing—all while requiring far less of the public's resources than a custodial sentence would entail—and would be "sufficient, but not greater than necessary" to meet those goals.[5] *See* 18 U.S.C. § 3553(a). As the U.S. Probation Office recognizes, Dkt. 26 ¶ 75, a condition of community service is appropriate if the Court sentences Gary to probation, 18 U.S.C. § 3563(a)(2), (b)(12).

---

[5] We also submit that should the Court not elect to impose a sentence of probation alone, other non-custodial sentences within the Guidelines range would sufficiently achieve these goals. *See* U.S.S.G. § 5B1.1 cmt. n.1(A) ("Where the applicable guideline range is in Zone A of the Sentencing Table . . . a condition requiring a period of community confinement, home detention, or intermittent confinement may be imposed but is not required.").

9

One potential organization for which Gary could perform community service is the Red Cross, a non-profit humanitarian organization that provides emergency assistance, disaster relief, and disaster preparedness education in the United States. Gary began volunteering with the Red Cross in early 2021, specifically serving with Disaster Cycle Services for the Coastal Bend region, which encompasses the counties south of Houston to Brownsville along the Texas Gulf Coast, overseeing approximately 50 shelters for victims of disaster events. After the Great Texas Freeze of 2021, Gary saw volunteering with the Red Cross as an opportunity to utilize his years of management and disaster planning for research facilities to serve his community. Gary provides shelter management and disaster assessment support to Disaster Cycle Services, which may require his deployment to disaster-stricken locations. Gary already volunteers his time weekly (approximately one to four hours) by, among other things, attending meetings, training, and participating in community outreach, such as delivering hurricane preparation packages to residents within the Coastal Bend region.

Beyond his usual duties with the Red Cross, Gary may be deployed to an area outside of the Coastal Bend region and provide other types of assistance. This year, from August 31 to September 10, Gary was deployed to New Orleans, Louisiana to assist the Red Cross's response to Hurricane Ida, which left widespread devastation throughout the region, especially in the New Orleans area. Gary's original assignment was to deploy to Houston, Texas, but when it was determined that Hurricane Ida was moving easterly, he was reassigned to New Orleans. Gary's assignment was to conduct reconnaissance to determine where resources were needed (e.g., water, fuel, food, shelter, and medical supplies) so that the federal government, Red Cross, and others could deliver necessary aid. Gary spent 140 volunteer hours during the assignment.

A probationary sentence would also serve "the interests of society as a whole" because Gary committed a non-violent offense, and he does not have any of the characteristics of an offender for which incarceration is most appropriate. *See* Pub. L. No. 98-473, § 239, 98 Stat. 1988, 2039 (1984) (set forth at note to 18 U.S.C. § 3551). Congress has noted that "prison resources" should be "reserved for those violent and serious criminal offenders who pose the most dangerous threat to society." *Id.* Gary poses no such threat to society and is neither "violent" nor a "serious criminal." Incarcerating Gary would not benefit society. In fact, a custodial sentence for Gary would do just the opposite; a custodial sentence in this case would prove costly and unnecessary—the Administrative Office of the United States Courts estimates that incarcerating Gary would be approximately ten times more expensive than supervising him during a term of probation. *See* Dkt. 26 ¶ 80.[6] Given Gary's age and his lack of a violent or criminal history, incarceration is simply unnecessary and would not further the goals of sentencing.

    **C.**    **A Sentence of Probation Reflects the Seriousness of the Offense, Avoids Unwarranted Sentencing Disparities, Affords Adequate Deterrence, Promotes Respect for the Law, and Protects the Public from Further Crimes**

        1.    *Probation Mirrors the Typical Sentence for a § 1001 Offense*

A sentence of probation is a within-Guidelines sentence and would be treated as a presumptively reasonable sentence by the Court of Appeals. *See United States v. Willis*, 560 F.3d 1246, 1251 (11th Cir. 2009) (noting that a district court's sentence "within a properly calculated guideline range" is treated as presumptively reasonable on appeal). Moreover, a sentence of probation in this case would be entirely consistent with other courts' sentencing decisions in

---

[6] Specifically, and as noted in the PSI, the latest guidance from the Administrative Office of the United States Courts (dated August 27, 2021) indicates that the monthly cost of incarcerating an individual in federal prison facilities is $3,688 as opposed to the monthly cost of supervising an individual on probation, which is $371. Dkt. 26 ¶ 80.

similar—and arguably more serious—cases and would therefore not create a sentencing disparity. *See* 18 U.S.C. § 3553(a)(6) (recognizing the "need to avoid unwarranted sentence disparities among defendants . . . who have been found guilty of similar conduct"). Indeed, federal courts throughout the country and in the Eleventh Circuit often impose a sentence of probation in false statement cases, including those where, unlike this case, the defendant was convicted by a jury or the false statement led to a financial loss or gain:

- *United States v. Xu*, No. 6:16-cr-14-GAP-TBS, Dkts. 44, 46, 76 (M.D. Fla. 2017) (president of a research and development company, which had a contract valued at $599,950 with the National Aeronautics and Space Administration ("NASA"), made false statements to NASA regarding the key personnel who would participate on a project—an important component in NASA's decision to award the contract—was sentenced to two years of probation).

- *United States v. Thompson*, No. 3:15-cr-00154-HLA-JBT-1, Dkts. 1, 20, 29 (M.D. Fla. 2016) (former U.S. Army Corp of Engineers employee who, during a voluntary interview, lied to Inspectors of the Federal Protective Service regarding her having placed an image of the Confederate battle flag on an African-American colleague's desk was sentenced to probation for one year and 120 hours of community service).

- *United States v. Schaller*, No. 9:13-cr-80140-DTKH-1, Dkts. 42, 67, 95 (S.D. Fla. 2014) (pilot convicted by a jury of five counts of making false statements in a Federal Aviation Administration ("FAA") Medical Certificate Application—the pilot falsely stated that he had never been convicted of a misdemeanor crime and that his FAA Airman Medical Certificate had never been denied, suspended, or revoked—was sentenced to two years of probation).

- *United States v. Lowery*, No. 4:13-cr-00091-SLB-JHE-1, Dkts. 1, 7, 13 (N.D. Ala. 2013) (recipient of $30,200 in disaster relief assistance from the Federal Emergency Management Agency ("FEMA") who lied to a FEMA representative about the location of his primary residence in order to receive those benefits was sentenced to three years of probation).

- *United States v. Miranda*, No. 1:11-cr-20212-DLG-3, Dkts. 3, 76, 86 (S.D. Fla. 2011) (woman who lied to FBI agents about her mother's involvement in two companies from which fraudulent claims were submitted to Medicare was sentenced to three years of probation).

- *United States v. Richey*, No. 3:05-cr-030-RDP-TMP, Dkts. 1, 23, 30 (N.D. Ala. 2005) (attorney who, during the course of an interview, provided false information to FBI agents regarding a client's payment to a local district attorney's fund was convicted by a jury and sentenced to two years of probation and 150 hours of community service).

The Bureau of Justice Statistics indicates that for the three most recent years for which data is available, a clear majority of those convicted of § 1001 offenses have received non-custodial sentences.  *See* Bureau of Justice Statistics, *Federal Criminal Case Processing Statistics*, https://www.bjs.gov/fjsrc/tsec.cfm.[7]  A within-Guidelines sentence of probation here would be consistent with the typical sentence for a § 1001 offense.  Accordingly, a sentence of probation in this case is a sufficiently serious punishment and promotes respect for the law.

> 2. *A Sentence of Probation is Warranted Given the Weight of a Felony Conviction and Other Non-Judicial Punishments Already Inflicted on Gary*

At 64 years old, Gary is in the latter half of his professional career.  Gary's conduct has largely stripped him of a legacy of which he can be proud.  Indeed, news of Gary's conviction has been disseminated by local and national sources.  *See, e.g.*, *Man Convicted of Lying to Federal Agents During International Wildlife Trafficking Investigation*, Dep't of Justice (Aug. 4, 2021), https://www.justice.gov/usao-sdfl/pr/man-convicted-lying-federal-agents-during-international-wildlife-trafficking; *see also* Robin Bradshaw, *Alice man convicted of lying to federal agents in illegal wildlife trafficking case*, Alice Echo News Journal (Aug. 19, 2021), https://www.alicetx.com/story/news/local/2021/08/16/alice-man-convicted-lying-feds-wildlife-trafficking-case/8150022002/.  Gary's conduct, especially the widespread knowledge of it among members of the industry and his community, will forever stain his reputation and legacy.  Beyond the reputational repercussions Gary has already experienced due to his conduct, as noted

---

[7] For the years 2016-2018, approximately 38 percent of all § 1001 convictions resulted in a custodial sentence.  Like the case examples above, the data includes cases with aggravating factors that are absent here, such as cases involving multiple offenses, no acceptance of responsibility, defendants with a prior criminal history, or a financial loss or gain resulting from the false statement(s).

previously, Gary relinquished his Michigan law license in July 2021 in advance of his guilty plea, which took away one of the few remaining viable alternatives to his current employment.

In addition to the above, a felony conviction has other far-reaching implications, including the loss of the right to vote and other valuable rights. A felony conviction also will require a "yes" response and explanation on innumerable form applications, including applications to obtain credit, open a bank account, and conduct other normal activities. All of these factors taken together in conjunction with a probationary sentence, which, as described below, would impose significant restrictions on Gary's day-to-day life, achieves the sentencing goal of specific deterrence.

        3.        *Probation is a Significant Punishment*

A probationary sentence is a significant sentence on its own. As the Supreme Court recognized, "'[p]robation is not granted out of a spirit of leniency'" but instead involves "substantial[] restrict[ions]" on liberty. *Gall*, 552 U.S. at 48 & n.4 (2007) (quoting Advisory Council of Judges of National Council on Crime and Delinquency, *Guides for Sentencing* 13–14 (1957)); *see also United States v. Knights,* 534 U.S. 112, 119 (2001). Rather than "the absolute liberty to which every citizen is entitled," a probationer only enjoys "conditional liberty," *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (internal quotations omitted)), which can be revoked "in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply," *see Knights*, 534 U.S. at 120. For these reasons, "probation [is] a sentence in and of itself," U.S.S.G. § 5B1.1 intro. cmt.; *see also United States v. Wright*, 607 F.3d 708, 714 (11th Cir. 2010), and it should be regarded as a sentence with serious implications. Therefore, a probationary sentence combined with the non-judicial punishments already inflicted on Gary delivers a clear message to would-be offenders that similar conduct carries serious, life-changing implications—thus "promot[ing]

14

respect for the law," *see* § 3553(a)(2)(A), and "afford[ing] adequate deterrence to criminal conduct," *see* § 3553(a)(2)(B).

        **D.**        **The COVID-19 Pandemic Also Weighs in Favor of a Non-Custodial Sentence**

Of course, the dangers posed by COVID-19 in prison settings should not "equal a 'get out of jail' card," as "COVID-19 runs the risk of transforming *any* incarcerative sentence on a non-capital crime to be greater than necessary." *See United States v. Navarro*, No. 14-60277-CR-DIMITROULEAS, 2020 WL 7012757, at *1 (S.D. Fla. Nov. 12, 2020) (emphasis added). Here, however, we submit that while concerns regarding the COVID-19 pandemic should not be the sole reason for a non-custodial sentence, those concerns should be afforded greater weight in cases such as this one where Gary is a non-violent first offender and the appropriate Guidelines range already permits a probationary sentence, especially when, at age 64, Gary is within the class of individuals who are at risk for serious complications resulting from the COVID-19 virus. *See COVID-19 Risks and Vaccine Information for Older Adults*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Sept. 19, 2021). Further, even though Gary is vaccinated, studies show that the risk of harm from COVID-19 in a prison setting remains even after vaccination. *See* Benjamin A. Barsky et al., *Vaccination plus Decarceration — Stopping Covid-19 in Jails and Prisons*, 384 New Eng. J. Med. 1583 (Apr. 29, 2021), https://www.nejm.org/doi/full/10.1056/NEJMp2100609. Accordingly, COVID-19 concerns reinforce and supplement the many reasons described above for why a probationary sentence should be issued in this case.

## CONCLUSION

We respectfully urge the Court to impose a within-Guidelines sentence of probation with community service. Such a sentence is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a).

Dated: October 7, 2021

Respectfully Submitted,

*/s/ Gerald E. Greenberg*
DANIEL S. GELBER
Florida Bar No. 512877
dan@gsgpa.com
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
GELBER SCHACHTER & GREENBERG, P.A.
SunTrust International Center
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131-1715
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com


JONATHAN LOPEZ *(pro hac vice)*
jonathan.lopez@allenovery.com
TAYLOR WEST *(pro hac vice)*
taylor.west@allenovery.com
ALLEN & OVERY
1101 New York Avenue, NW
Washington, D.C., 20005
Telephone: 202-683-3800

*Counsel for Defendant*