**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**


**Case No. 21-20263-CR-DIMITROULEAS**



**UNITED STATES OF AMERICA**

**v.**

**GARY TUCKER,**
                        **Defendant.** /
_____

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM SEEKING PROBATION**

The United States hereby responds to defendant Gary Tucker's Sentencing Memorandum in Support of a Sentence of Probation [D.E.-27], and in opposition thereto would show:

**BACKGROUND**

Defendant, a well-compensated officer of a company engaged in the importation of non-human primates from southeast Asia, is before the Court for sentencing upon his guilty pela to a single-count Information charging his with making materially false statements to federal investigators.

The United States Fish & Wildlife Service is charged through the Endangered Species Act, Title 16, United States Code, Section 1538, et seq, with assuring compliance in the United States with the requirements of the Convention on International Trade in Endangered Species of Wild Fauna & Flora (CITES), which mandates documentation accompany all shipments of non-human primates, attesting to their status as captive-bred, for legal importation to the United States.

At the time of his "voluntary" interview on July 11, 2019, defendant was well aware of issues within the industry group engaged in the business of buying and selling non-human primates on the world market, related to wild-caught primates being "laundered" through purported captive-breeding facilities and ultimately being exported and sold from their countries of origin under false documentation. Defendant Tucker and others associated with both he and his employers, conducted frequent visits to "breeding" facilities in Asia to determine the condition of both the facilities and the specimens of non-human primates on hand therein. Additionally, in company with veterinary personnel, defendant would participate in the selection of specimens to be included in shipments to be imported into the United States.

Defendant was apprised of the focus of the government's investigation and was asked multiple times during the July interview whether audits and site visit reports existed, documenting the activities of he and others during the frequent trips to the suppliers' facilities, which would reflect the conditions and capacities of the facilities, and other matters of significant concern to the Special Agents involved in the investigation.

In the course of the July 11 interview, the Defendant was specifically asked about his involvement in the procurement of long-tailed macaques [a small non-human primate regularly employed in scientific research in the United States and abroad] from Southeast Asia. He responded to the specific questions by the Special Agents regarding audits and site visits by he and other employees of Orient BioResource Center (OBRC) to supplier sites in Cambodia by categorically denying any audit reports or site visit reports of any description were prepared and submitted to OBRC.

In fact, as Defendant well knew, preparation and submission of site visit reports was a

standard procedure at OBRC.[1]

Defendant's proffered explanation for his "terrible error in judgment" in lying to the investigators centers on his "long-held" concerns related to the objection by private organizations of the use of non-human primates for research purposes. D.E.27, at 1-2.

## DISCUSSION

Defendant's claim that his personally held view that audit reports were sacrosanct in his industry as an excuse to minimize his criminal conduct borders on the absurd. Given the extent of his education, including a Juris Doctorate, his claim that this was a simple error in judgment to protect his industry from possible criticism in the public realm is simply not credible. Impulsive mistakes can be amended. Defendant had almost two full years, during which there were repeated contacts between the United States and his representatives, to clarify the record and retract his lies. Even during the proffer in February 2020, referenced on Memorandum at 8, ¶2, defendant failed to disclose the practice of embodying the results of facility visits and evaluation in written audit or site visit reports, repeating through counsel the myth that only an oral report was provided. He chose not to provide a truthful statement until confronted in the Spring of 2021.

It is also notable that defendant, while questioned regarding the existence of the documents, was not then, and likely would NEVER have been required to personally provide documents belonging to his employer(s) to the agents. He would know, as a licensed attorney, that compulsory process would otherwise be available for that purpose to the Special Agents, and that a full range of procedural and due process safeguards would attach to any production – including secrecy for

---

1 In fact, a PowerPoint created in 2017 at OBRC, on the subject of Supplier Selection Criteria, under the caption "Supplier Audits" noted that defendant Tucker had been performing such activities since 2009, and that it was an activity involving "multiple visits per year, [with] each visit is one or more weeks." The same presentation addressed concerns over "Integrity of Breeder Stock" because of concerns with the financial incentive to buy trapped animals [versus supplying captive-bred] and identifying specific *Audit signs* for the visitors to consider.

those very documents, under statute and the federal Rules of Criminal Procedure.

It is equally unlikely, given the availability of other evidence, including the comments referenced *supra* with respect to OBRC's 2017 PowerPoint, that defendant was not concerned that the government's investigation might lead to further evidence of actual criminal conduct on the part of companies and individuals involved in the industry, including, inter alia, associates and friends of the defendant. If he were, indeed, so concerned over possible bad publicity from an outside source affecting the industry – and presumptively his position within the industry – it is logical to infer that evidence leading to potential criminal charges would be orders of magnitude greater as a concern to him, should the government become aware of and pursue acquisition of the audits.

Defendant provides a series of asserted "non-judicial punishments" in support of his request for a mere probationary sentence. They are largely illusory.

Publicity in this matter has hardly been voluminous. One brief press release by the U.S. Department of Justice, and an article in the Alice, Texas[2] Echo News Journal that largely parroted the press release, hardly demonstrate the wide-spread knowledge of his activities that he asserts.

That press, and his conduct, has apparently had no effect whatsoever on his employment or status. Apparently, defendant need not concern himself with a "viable alternative to his current employment."

Additionally, his claim of voluntary service to the Red Cross is somewhat inconsistent with the reality of his activities in early 2021. He asserts that he began performing volunteer service at the American Red Cross - an organization embraced by the defendant "after the 'great Texas freeze

---

2  As of July 1, 2019, the official estimate of eh population of Alice, Texas was 18,682, according to the U. S. Census Bureau, two-thirds of whom were under the age of 18. https://www.census.gov/quickfacts/alicecitytexas.

in 2021'"[3] motivated him to offer his services. That freeze was the result of three storms spanning the period from February 10 through February 20, 2021. According to his Memorandum, defendant was in Cambodia for business in February 2021, D.E.-27 at 8, ¶2. The United States has reviewed defendant's travel record and determined that, indeed, he departed the United States on February 4, 2021 and did not return until March 13, 2021. The timing of his "volunteer" efforts seems more aligned with the February communication with the government wherein his criminal liability was raised.

The suggested loss of a future legal-career, ostensibly due to defendant "formally terminating his Michigan law license in July 2021 in connection with his guilty plea" is simply a make-weight argument. By his own admission – defendant's legal career was at best part-time from about 1994 through 2004, a period during which he was employed by Covance, Inc. and he has not practiced law in over 17 years. The instant matter can hardly be said to have truncated a successful or lucrative career in the law.[4]

Defendant's conduct and case is not analogous to the series of Section 1001 matters he recites. They are, upon analysis, primarily focused on false statements where the content of the statements made by those individuals had direct culpability for them. That culpability has not been admitted by defendant herein who's false statements were intended, if he is to be credited on that score, to protect an "industry." Neither do the circumstances in those cases mirror the extended period of inquiry and communication, and the lengthy opportunity to purge the false statements.

The United States recognizes that probation, in appropriate cases may serve all the interests of sentencing recognized and embodied in the Congressional guidance provided to Courts. Title

---

3 D.E.-26, PSR at ¶55.
4 Indeed, to characterize the termination of defendant's law license as "voluntary" also seems suspect given the well-known aversion of organized Bar Associations to their members engaging in and being convicted felony conduct involving moral turpitude.

18, United States Code, Section 3553(a)(1)-(7), and the advisory Sentencing Guidelines. This is not one of those cases. For a period approaching two years, defendant actively sought to persuade the investigators that audit and site reports of great significance to the investigation did not exist. That effort inhibited a more robust investigation into the existence, location, and content of reports that would have provided timely information regarding the numbers, capacities, sex ratios and related information germane to the international investigation. That delay, while not easily calculable in dollars and cents had a cost to the government and the public. An accounting is clearly due for the willful conduct that generated the obstruction of the investigation.

### Conclusion

Based upon the foregoing, the United States respectfully submits that a mere probationary sentence in this matter would seriously undermine the government's efforts to secure general deterrence of this defendant who has demonstrated his willingness to place his personal concerns and judgment ahead of the requirements of the law, and other individuals intent on impeding a lawful investigation by suppling false information to investigators, contrary to the clear mandate of Title 18, United States Code, Section 3553(a)(2)(A)-(C). A sentence including significant restrictions on defendant's liberty and his involvement in the business in question should be central components of the sentence imposed by the Court. Additionally, as noted in D.E.26, PSR at ¶ 69, defendant has the ability to pay a fine in this matter and the United States would urge the Court to do so in an amount within the Guideline Range, of $9,500.

The effect of the criminal conduct here was to impede and delay a lawful investigation – essentially obstructing the progress of an effort already hampered by the pending pandemic and the international nature of the business. The United States prays this Honorable Court will craft a sentence reflecting the true seriousness of the offense and provide just punishment for defendant's

calculated violation of Title 18, United States Code, Sections 1001(a)(2).

Respectfully submitted,

ANTONIO JUAN GONZALEZ
ACTING UNITED STATES ATTORNEY

By:   /s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney
Florida Bar No. 0273538
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9413
Email: thoams.watts-fitzgerald@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF

/s/ Thomas A. Watts-FitzGerald
Assistant United States Attorney

7